*2 PER CURIAM:
At a general court-martial composed of officer members, Appellant was convicted, contrary to his pleas, of conspiracy to commit unpremeditated murder, unpremeditated murder, larceny, and kidnapping, in violation of Articles 81, 118(2), 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 918(2), 921, and 934, respectively. The adjudged and approved sentence included a dishonorable discharge, confinement for life, total forfeiture of pay and allowances, and reduction to the lowest enlisted grade. The United States Army Court of Criminal Appeals affirmed in an unpublished opinion.
On Appellant’s petition, we granted review of one assigned issue[1] and one specified issue.[2] For the reasons set forth below, we affirm the findings of unpremeditated murder, larceny, and kidnapping, modify the findings on the conspiracy charge, and affirm the sentence.[3]
I. BACKGROUND
Appellant was convicted of murdering Private First Class (PFC) Chafin in August 1997. In a separate trial, Appellant’s co-actor, Sergeant Seay, was convicted of premeditated murder and other offenses related to the death of Chafin. See United States v. Seay, 60 M.J. 73 (C.A.A.F.2004). In the present trial, the prosecution introduced evidence of the following events.
Chafin’s roommate, Specialist Henry, testified that Appellant, Seay, and Chafin attended a party in the barracks along with several other soldiers. During the evening, there was a shoving match between Chafin and Appellant’s roommate, Specialist Johnson. After the other soldiers separated Chafin and Johnson, Henry escorted Chafin to their room. Henry, who thought Chafin was too drunk to go out that evening, advised him to stay in, and then left Chafin alone in the room.
According to Seay, Appellant subsequently brought Chafin to Seay’s vehicle. Appellant and Chafin began to argue in the car. Seay’s wife testified that after the three men arrived at Seay’s apartment, Chafin passed out on the couch, and she told them to remove Chafin from the apartment.
Seay testified that he went to his vehicle, and at Appellant’s direction, sat in the back. Appellant placed Chafin, who was still drunk, in the front passenger seat and drove away from the apartment. According to Seay, Appellant “had some string on him and wanted me to choke [Chafin] ‘till he passed out ____’” After initially declining to do so, Seay began to choke Chafin, which awoke him. When Appellant drove to the side of the road, Chafin left the vehicle and attempted to escape. Appellant intercepted Chafin, pinned him to the ground, gave Seay a knife, and told him to stab Chafin in the neck. Seay complied, stabbing Chafin in the neck and ribs. He then passed the knife to Appellant, who repeatedly stabbed Chafin in the ribs. Appellant then dumped Chafin’s body down a ravine. A week later, Appellant learned Chafin had been carrying a substantial amount of money with him on the night of the murder. He returned to the ravine with Seay and removed Chafin’s wallet, keys, and a belt.
Chafin’s corpse was not discovered for four months, and the investigation continued for two years. During the initial stages, the investigators scrutinized the activities that evening of a number of individuals, including Appellant, Seay, and Johnson. Seay’s wife, at his request, initially misled the investiga *3 tors as to Chafin’s whereabouts on the night of his disappearance, but she later advised them of her suspicion that her husband was involved in the murder. Two years after the incident, Seay confessed, providing a detailed description of his participation with Appellant in the murder of Chafin. Seay was tried by general court-martial, convicted of murder, and sentenced to confinement for life without parole, a dishonorable discharge, total forfeiture of pay and allowances, and reduction to the lowest enlisted grade. The convening authority then provided a grant of testimonial immunity and ordered him to testify at Appellant’s court-martial.
II. PRODUCTION OF WITNESSES
A. THE DEFENSE MOTION
One element of the defense strategy at trial involved an attempt to persuade the panel that Johnson, not Appellant, was Seay’s partner in crime. Although the defense had no plausible explanation for the fact that Seay provided a detailed description of Appellant as the perpetrator, and not Johnson, the defense sought to raise a doubt as to Appellant’s role by demonstrating that Johnson had motive and opportunity to murder Chafin.
At the request of the defense, the military judge ordered the production of Johnson as a witness. Anticipating that Johnson would present self-exculpatory testimony, the defense also sought production of three other witnesses — Ms. Werth, Ms. Dominico, and Ms. King — both to offer substantive evidence of Johnson’s motive and opportunity to murder Chafin and for the purpose of impeaching his expected testimony. The military judge denied the request to produce these three witnesses. The defense challenges that ruling in the present appeal.
The defense subsequently decided not to call Johnson as a witness. Appellant asserts that the military judge forced the defense to forgo calling Johnson because of the erroneous refusal to order production of the three witnesses. According to the defense, these witnesses would have demonstrated that Johnson had a motive to commit the murder,
that he had provided investigators with a false alibi for the evening of the crime, and that he had exhibited consciousness of guilt. Appellant contends that the military judge’s ruling was contrary to his Sixth Amendment right to compulsory process for obtaining witnesses and his Fifth Amendment right to present the testimony of such witnesses in his own defense.
B. ASSESSMENT OF PREJUDICE
For purposes of this appeal, we shall assume, without deciding, that the three requested witnesses possessed information that was “relevant and necessary” under Rule for Courts-Martial (R.C.M.) 703(b)(1), and that Appellant was entitled to their production. See United States v. Breeding, 44 M.J. 345, 350 (C.A.A.F.1996). In that context, the issue is whether any error in denying the production of these witnesses was harmless beyond a reasonable doubt. United States v. Powell, 49 M.J. 220, 225 (C.A.A.F.1998).
The defense proffer that accompanied the motion indicated that Ms. King would dispute Johnson’s initial statement to investigators that he was at Ms. King’s residence on the night of Chafin’s disappearance, contrary to an alibi initially provided by Johnson to investigators. Ms. King, however, could not be located by either party. She did not testify at the investigation pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (2000). Defense counsel had never spoken to her, and the Government could not locate her at the address provided by the defense. The defense has not demonstrated that the Government was negligent or otherwise deficient in its attempt to locate her.
Defense counsel proffered that Ms. Werth would testify that Johnson called her from Kuwait, and during the conversation, he inquired about the investigation into Chafin’s disappearance. The proffer also indicated that she would testify that Johnson was rude when Chafin’s father came to the installation to inquire about his son. According to the defense, both of these incidents would reflect Johnson’s guilty state of mind.
The defense also proffered that Ms. Werth would testify that Johnson told her that his *4 wallet had been stolen. The defense would have tied this to testimony from Mrs. Seay that the wallet of a guest had been stolen, which the defense would have used to show that Johnson, not Appellant, was in the Seay apartment on the night of the murder. Finally, the defense proffered that Ms. Werth would testify that Chafin had told her that Johnson had once lied to her when Johnson said that he had gone to Texas to settle a score, when he had not done so. According to the defense, this would have shown that because Chafin caught Johnson in a lie and told Werth about it, the embarrassment would have provided Johnson with a motive to kill him.
Defense counsel proffered that Ms. Dominico would testify that several weeks after Chafin’s disappearance, Johnson said to her “Personally, I think he’s dead.” According to defense counsel, this comment reflected a guilty state of mind.
Assuming that these statements met the modest threshold required for production of witnesses under R.C.M. 703, we conclude that any error in non-production of these two witnesses was harmless beyond a reasonable doubt. The Government’s case against Appellant was very strong. Seay testified in graphic detail how he and Appellant killed Chafin. His testimony was corroborated by physical evidence and Mrs. Seay’s testimony, particularly her description of Chafin’s arrival with Appellant and Seay at the Seay residence on the night of the murder. The defense was unable to provide the panel with any reasonable explanation as to why Seay would substitute Appellant for Johnson as his co-actor. With respect to Mrs. Seay, the defense sought to portray her as confusing Appellant with Johnson, but she confirmed that she knew both men, and that it was Appellant, not Johnson, who was in her apartment on the evening in question.
The entirety of the record establishes that the denial of the three witnesses at issue was harmless beyond a reasonable doubt. See United States v. Hall, 58 M.J. 90, 94-95 (C.A.A.F.2003).
III. CONSPIRACY TO COMMIT UNPREMEDITATED MURDER
A. INSTRUCTIONS
The military judge instructed the panel regarding the elements of both premeditated murder and conspiracy to commit premeditated murder. In accordance with defense counsel’s request, the military judge also included instructions regarding the lesser included offenses of unpremeditated murder and conspiracy to commit unpremeditated murder.
Regarding unpremeditated murder, the military judge instructed, in part, that the members would have to find “that at the time of the killing, the accused had the intent to kill or inflict great bodily harm on PFC Chafin.” With respect to conspiracy to commit unpremeditated murder, the military judge included in the instructions the requirement that the members would have to find that the accused “entered into an agreement with Sergeant Bobby D. Seay II to commit unpremeditated murder,” and that the elements of the object of the conspiracy were “the same as set forth in the instruction on the lesser included offense of unpremeditated murder.” After deliberations, the panel returned findings of not guilty of the premeditated offenses, but guilty of both lesser included offenses.
B. PREMEDITATED MURDER, UNPREMEDITATED MURDER, AND CONSPIRACY
Article 118, UCMJ, includes two offenses pertinent to the present case: (1) premeditated murder (an unlawful killing by a person who “has a premeditated design 'to kill”); and (2) unpremeditated murder (an unlawful killing by a person who “intends to kill or inflict great bodily harm”). Article 81, UCMJ, in pertinent part, makes it an offense to “conspire[ ] with another person to commit an offense” under the UCMJ.
Appellant contends that the act of conspiring to commit murder transforms an unpremeditated murder into a premeditated murder, and that a finding of not guilty to *5 premeditated murder negates the existence of an agreement to commit murder.[4] Appellant argues that if the parties to the conspiracy agreed only to commit great bodily harm to Chafin, then the offense would amount only to conspiracy to commit an aggravated assault. Under the defense theory, the fact that a death eventually resulted from a conspiracy to commit aggravated assault might be relevant to whether a person could be charged with unpremeditated murder, but that would not transform an agreement to commit great bodily harm into an agreement to commit murder.
The Government counters that conspiracy to commit unpremeditated murder is a valid offense under the UCMJ. Specifically, the Government focuses on the “intent to inflict great bodily harm” as an available state of mind under Article 118(2), the offense of unpremeditated murder. The Government argues that the panel reasonably could have determined that Appellant entered into an agreement with Seay to inflict great bodily harm on Chafin. In the Government’s view, such an intent would satisfy the intent element for the conspiracy offense without a further need to determine whether Appellant intended an unpremeditated killing.
In the present case, the military judge’s instructions included alternative theories upon which the members could rely to find Appellant guilty of unpremeditated murder, both as a substantive crime and as the underlying offense of the conspiracy. The members returned a general verdict of guilty of both of these lesser included offenses. Because the members do not provide an explanation when announcing their findings, the record does not demonstrate whether the members found an “intent to kill” or an “intent to inflict great bodily harm” as the determinative state of mind. Under these circumstances, we cannot affirm the finding of conspiracy to commit unpremeditated murder unless Appellant would be hable under both theories. See Griffin v. United States, 502 U.S. 46, 51-56, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); Yates v. United States, 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds, Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
Appellant’s conviction for conspiracy to commit unpremeditated murder cannot be affirmed on appeal because the instructions authorized the members to base the conviction on a finding of an intent to “inflict great bodily harm.” If the intent of the parties to the agreement was limited to the infliction of great bodily harm, their agreement was to commit aggravated assault, not unpremeditated murder. See Article 128(b), UCMJ, 10 U.S.C. § 928(b) (2000); 2 Wayne R. LaFave, Substantive Criminal Law § 12.2(c)(2), at 278-79 (2d ed.2003); State v. Donohue, 150 N.H. 180, 834 A.2d 253, 256 (2003). In view of our disposition of this issue, we need not address Appellant’s contention that conspiracy to commit unpremeditated murder may not be predicated upon an “intent to MU” state of mind after the members have rejected the premeditation element of the charged conspiracy to commit premeditated murder.
Under the circumstances of this case, we can affirm a finding of guilty to the lesser included offense of conspiracy to commit aggravated assault. In view of that finding and the other findings we affirm in this decision, we conclude that any error in the conspiracy finding was not prejudicial as to the sentence.
IV. DECISION
The decision of the United States Army Court of Criminal Appeals is affirmed, except for the finding of conspiracy to commit unpremeditated murder. As to that offense, a finding of the lesser included offense of conspiracy to commit aggravated assault, in violation of Article 128, UCMJ, is affirmed.

. WHETHER APPELLANT’S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS WERE VIOLATED WHEN THE MILITARY JUDGE REFUSED TO ORDER PRODUCTION OF WITNESSES WHO WERE NECESSARY AND MATERIAL TO THE DEFENSE.

. WHETHER THE SPECIFICATION UNDER CHARGE I OF WHICH APPELLANT WAS CONVICTED, CONSPIRACY TO COMMIT UNPREMEDITATED MURDER, STATES AN OFFENSE UNDER THE UCMJ.

. We heard oral argument in this case at the Franklin Pierce Law Center, Concord, New Hampshire, as part of the Court's "Project Outreach.” See United States v. Mahoney, 58 M.J. 346, 347 n. 1 (C.A.A.F.2003).

. In support of this position, Appellant cites Mitchell v. State, 363 Md. 130, 767 A.2d 844, 854-55 (2001); People v. Cortez, 18 Cal.4th 1223, 77 Cal.Rptr.2d 733, 960 P.2d 537, 538 (1998); and People v. Hammond, 187 Mich.App. 105, 466 N.W.2d 335, 337 (Mich.Ct.App.1991).