UNITED STATES, Appellant and Cross-Appellee

v.

Ryan D. HUMPHRIES, Senior Airman
U.S. Air Force, Appellee and Cross-Appellant

No. 10-5004

Crim. App. No. 37491

United States Court of Appeals for the Armed Forces

Argued February 13, 2012

Decided June 15, 2012

RYAN, J., delivered the opinion of the Court, in which ERDMANN,
J., and EFFRON, S.J., joined.  BAKER, C.J., filed a dissenting
opinion.  STUCKY, J., filed a dissenting opinion.


Counsel

For Appellant and Cross-Appellee:  Gerald R. Bruce, Esq.
(argued); Lieutenant Colonel Linell A. Letendre.

For Appellee and Cross-Appellant:  Dwight H. Sullivan, Esq.
(argued); Major Michael S. Kerr (on brief).


Military Judge:  Grant L. Kratz



**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a panel of officer and enlisted members, sitting as a general court-martial, convicted Appellee of consensual sodomy and of adultery, in violation of Articles 125 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 934 (2006). The adjudged and approved sentence provided for a bad-conduct discharge and reduction to the grade of E-1. The United States Air Force Court of Criminal Appeals (AFCCA) determined that a bad-conduct discharge was inappropriately severe under the facts of the case. On certification under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006), the Judge Advocate General of the Air Force (TJAG) asked us to hold that the AFCCA's action was an impermissible exercise of appellate clemency.[1] In addition, on December 15, 2011, we granted Appellee's cross-petition to determine the following issue:

> WHETHER A CONTESTED ADULTERY SPECIFICATION THAT FAILS TO EXPRESSLY ALLEGE AN ARTICLE 134 TERMINAL ELEMENT BUT THAT

---

[1] On September 15, 2011, TJAG requested that action be taken with respect to the following issue:

> WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN FINDING APPELLEE'S SENTENCE INAPPROPRIATELY SEVERE UNDER THE UNIQUE CIRCUMSTANCES OF THIS CASE AND ERRED IN AN ATTEMPT AT EXERCISING APPELLATE CLEMENCY BY REMANDING THE CASE TO THE CONVENING AUTHORITY WITH INSTRUCTIONS THAT THE CONVENING AUTHORITY MAY APPROVE AN ADJUDGED SENTENCE NO GREATER THAN A SUSPENDED BAD CONDUCT DISCHARGE AND A REDUCTION TO THE GRADE OF E-1.

WAS NOT CHALLENGED AT TRIAL STATES AN OFFENSE.[2]

Appellee did not object to the form of the adultery specification at trial. Consistent with our recent decisions in United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011), and United States v. Ballan, 71 M.J. 28 (C.A.A.F. 2012), we hold that it was error to omit the terminal element of Article 134, UCMJ, from the adultery specification. Because the law at the time of trial was settled and clearly contrary, it is enough that the error is plain now, and the error was forfeited rather than waived. See United States v. Harcrow, 66 M.J. 154, 156-58 (C.A.A.F. 2008). Applying the remainder of the plain error test, we further hold that, under the particular facts of this case, Appellee has shown material prejudice to a substantial right -- his right to notice under the Fifth and Sixth Amendments. Given that we are dismissing the finding of guilty to the Article 134, UCMJ, adultery charge, and returning the record of trial to TJAG for remand to the AFCCA for reassessment or, if necessary, for ordering a rehearing on the sentence, we do not reach the certified issue.

## I. FACTS

The events relevant to the decisional issue in this case relate to a sexual encounter between Appellee, who was married

---

[2] United States v. Humphries, 71 M.J. 6 (C.A.A.F. 2011) (order granting review).

3

at the time, and AEH, a family friend of Appellee's and the wife of a deployed airman.  Relative to this incident, the Government referred the following charges:  (1) one charge and one specification of rape, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2006); (2) one charge and one specification each of adultery and wrongfully communicating a threat, violations of Article 134, UCMJ; and (3) one additional charge and one specification of forcible sodomy on divers occasions, in violation of Article 125, UCMJ.[3]  As charged, neither the adultery specification nor the communicating a threat specification alleged the terminal element of Article 134, UCMJ.

At the close of the Article 39(a), 10 U.S.C. § 839(a) (2006), session, the parties agreed to a slightly modified charge sheet, admitted as the "flyer," which still did not allege the terminal element for the Article 134, UCMJ, specifications.  Appellee pleaded not guilty to the charges and specifications as described in the flyer.  There was no mention of the terminal element of the Article 134, UCMJ, offenses during the Article 39(a), UCMJ, session, during opening statements, or at any point up until the military judge provided the parties with his draft panel instructions.  In these instructions, which were provided to the panel, the military

---

[3] Appellee was also charged with having committed similar offenses with a second woman, but was acquitted of all conduct relative to that incident.

4

judge defined clauses 1 and 2 of the terminal element and listed it as a necessary element of each Article 134, UCMJ, offense.

Throughout the proceedings, the Government's theory of guilt was that Appellee had forcibly raped and sodomized AEH. Even during closing arguments, the Government made only the briefest mention of the adultery charge and specification and at no point referenced the terminal element of Article 134, UCMJ.

After deliberation, the panel convicted Appellee of adultery, in violation of Article 134, UCMJ, and of consensual sodomy, as a lesser included offense of the Article 125, UCMJ, forcible sodomy charge. The panel found Appellee not guilty of rape and forcible sodomy. Appellee's sentence, which the convening authority approved, was a bad-conduct discharge and reduction to the grade of E-1.

As relevant to the certified issue, the AFCCA found that Appellee's crimes were "aggravated by the fact that they were committed:  (1) in base housing; (2) with the spouse of a deployed service member; and (3) at a time when he was married and the father of three minor children." United States v. Humphries, No. ACM 37491, 2010 CCA LEXIS 236, at *7, 2010 WL 2266324, at *2 (A.F. Ct. Crim. App. May 24, 2010) (unpublished). Nonetheless, it determined that "given the consensual nature of his crimes, an unsuspended punitive discharge [was] inappropriately severe."  2010 CCA LEXIS 236, at *8, 2010 WL

226634, at *2.  While there is additional procedural history relevant to the certified issue, it is not relevant to the decisional issue in this case.

II.  THE ARTICLE 134, UCMJ, ADULTERY SPECIFICATION

"Whether a specification is defective and the remedy for such error are questions of law, which we review de novo." Ballan, 71 M.J. at 33 (citing United States v. Crafter, 64 M.J. 209, 211 (C.A.A.F. 2006); United States v. Girouard, 70 M.J. 5, 10 (C.A.A.F. 2011)).

A.  Error

The alleged error in this case, as in Ballan and Fosler, is that the Article 134, UCMJ, specification was defective because it failed to allege the terminal element of that offense.  See id. at 34; Fosler, 70 M.J. at 232-33.  As in those cases, the specification at issue here was legally sufficient at the time the case was referred (February 13, 2009) and tried (March through May, 2009) and is "problematic today only because of intervening changes in the law."  Ballan, 71 M.J. at 34 n.4 (citing Fosler, 70 M.J. at 232; United States v. Mayo, 12 M.J. 286, 293-94 (C.M.A. 1982)).  Under current law, "the terminal element of Article 134, UCMJ, like any element of any criminal offense, must be separately charged and proven."  Id. at 33. And, "regardless of context, it is error to fail to allege the terminal element of Article 134, UCMJ, expressly or by necessary

6

implication." Id. at 34; see also Fosler, 70 M.J. at 232 ("The Government must allege every element expressly or by necessary implication, including the terminal element."). Although Appellee did not object to the defective specification at trial, this is hardly surprising, as any such objection would have been futile based on the state of the law at the time of trial. Where the law was settled at the time of trial and has subsequently changed, we apply the law as it exists today. See Girouard, 70 M.J. at 11 ("Given 'this legal and factual context, defense counsel's trial strategy could not be considered an intentional relinquishment or abandonment' of a known right." (quoting Harcrow, 66 M.J. at 158)).

### B.  Applicable Test

#### i.

The existence of error alone does not dictate that relief in the form of a dismissal is available.  While a specification that fails to properly allege an element of a charged offense is defective, and while such a defect affects constitutional rights, it does not constitute structural error subject to automatic dismissal.  See Girouard, 70 M.J. at 11; see also Neder v. United States, 527 U.S. 1, 8 (1999) ("[W]e have found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.'" (quoting Johnson v. United States, 520 U.S. 461, 468 (1997))).

7

ii.

Nor does the apparently straightforward language of Rule for Courts-Martial (R.C.M.) 907(b)(1)(B) -- which provides that "[a] charge or specification <u>shall</u> be dismissed at any stage of the proceedings if . . . [t]he specification fails to state an offense" (emphasis added) -- survive the erosion of the legal basis for its existence and thus mandate automatic dismissal of a defective specification.  When this R.C.M. provision was enacted, it was based on the then-existing version of Federal Rules of Criminal Procedure 12(b)(2) and 34.  <u>See</u> <u>Manual for Courts-Martial, United States</u>, Analysis of the Rules for Courts-Martial app. 21 at A21-56 (2008 ed.) (<u>MCM</u>); <u>see</u> <u>also</u> Fed. R. Crim. P. 12(b)(1), (2) advisory committee's note (1944 adoption) (establishing a set of objections and defenses, including "failure of an indictment or information to state an offense," which if not raised by motion were nonetheless not waived).  At that time, in accordance with Supreme Court precedent, where an indictment was found defective for failing to list all elements of an offense, it was necessarily dismissed on jurisdictional grounds (regardless of when the error was raised).  <u>Ex parte Bain</u>, 121 U.S. 1, 13-14 (1887) (holding that the lower court lacked jurisdiction to render judgment due to defects in the indictment).  Jurisdictional requirements were even more stringent in the military context, where failure to allege a

8

"service connection" stripped the military court of jurisdiction and mandated dismissal.  O'Callahan v. Parker, 395 U.S. 258, 272-73 (1969); see also Relford v. Commandant, 401 U.S. 355, 367-69 (1971) (listing the factors to be considered in the context of the "'service-connected' test"); MCM ch. XII para. 68b (1969 rev. ed) ("If the court lacks jurisdiction or if the charges fail to allege any offense under the code, the proceedings are a nullity."); United States v. Alef, 3 M.J. 414, 416 (C.M.A. 1977); United States v. Sims, 2 M.J. 109, 112 (C.M.A. 1977); United States v. Hedlund, 2 M.J. 11, 13 (C.M.A. 1976).

In more recent history, however, "[b]ecause the consequences that attach to the jurisdictional label may be so drastic," the Supreme Court has "tried in recent cases to bring some discipline to the use of this term."  Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011).  It has "urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction.  Other rules, even if important and mandatory . . . should not be given the jurisdictional brand."[4]  Id. at 1202-03 (internal citations omitted).

---

[4] No one disagrees that in the absence of subject-matter jurisdiction a charge must be dismissed.  See, e.g, Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("[A] valid objection [to subject-matter jurisdiction] may lead a court midway through

Moreover, the Supreme Court overtly reversed itself with respect to the effect on jurisdiction of indictments that are defective because they fail to allege elements, see, e.g., United States v. Cotton, 535 U.S. 625, 631-32 (2002) (overruling Bain, 121 U.S. 1, "[i]nsofar as it held that a defective indictment deprives a court of jurisdiction"), and those that are defective because they fail to allege a "service connection."  Solorio v. United States, 483 U.S. 435, 450-51 (1987) (overruling O'Callahan, 395 U.S. 258, and holding that court-martial jurisdiction depends solely on the accused's status as a member of the armed forces).  Instead, the Court subjected such error to a plain error analysis.  Cotton, 535 U.S. at 631-32.

### iii.

This Court's precedent is consistent with the limits set by the Supreme Court on the application of structural error and its holding with respect to the nonjurisdictional status of defective specifications.  A defective specification does not

---

briefing to dismiss a complaint in its entirety."); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868) (quotation marks omitted))); R.C.M. 907(b)(1)(A) (it is a nonwaivable ground for dismissal where "[t]he court-martial lacks jurisdiction to try the accused for the offense").  And no one suggests that the court-martial lacked either jurisdiction over Appellee or jurisdiction over the offenses.

constitute structural error or warrant automatic dismissal. An accused's claim that a charge fails to allege all elements of an offense can be raised at any time during court-martial or appellate proceedings. See R.C.M. 907(b)(1)(B). However, where defects in a specification are raised for the first time on appeal, dismissal of the affected charges or specifications will depend on whether there is plain error -- which, in most cases, will turn on the question of prejudice.[5] Cotton, 535 U.S. at 631-32 (applying plain error review); United States v. Sinks, 473 F.3d 1315, 1320-21 (10th Cir. 2007) (applying plain, not harmless, error review); see also Ballan, 71 M.J. at 34-36; Girouard, 70 M.J. at 10-12; United States v. Velasco-Medina, 305 F.3d 839, 846-47 (9th Cir. 2002); United States v. Rios-Quintero, 204 F.3d 214, 215-16 (5th Cir. 2000); United States v. Glick, 142 F.3d 520, 523 n.3 (2d Cir. 1998).

---

[5] In Fosler, a contested case where the military judge denied the appellant's motion to dismiss, "[t]he remedy for th[e] erroneously denied motion to dismiss [was] dismissal." 70 M.J. at 233. Implicit in this determination was our application of the harmless error test and finding that the government had failed to demonstrate that the constitutional error in that case was harmless beyond a reasonable doubt. Id. at 230 (the error was a deficient specification, and principles of fair notice require that "[a]n accused must be given notice as to which clause or clauses he must defend against"); see, e.g., Neder, 527 U.S. at 8 (only a "very limited class of cases" involving "structural" error are "subject to automatic reversal"; "there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis" (quotations marks and citations omitted)); Chapman v. California, 386 U.S. 18, 22 (1967).

C.   Plain Error Review

i.

In the context of a plain error analysis of defective indictments, "[the] [a]ppellant has the burden of demonstrating that:  (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused."  Girouard, 70 M.J. at 11 (citing United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998)); see also Cotton, 535 U.S. at 631-32; United States v. Paige, 67 M.J. 442, 449 (C.A.A.F. 2009); United States v. Maynard, 66 M.J. 242, 244 (C.A.A.F. 2008) (citing United States v. Hardison, 64 M.J. 279, 281 (C.A.A.F. 2007)); United States v. Carter, 61 M.J. 30, 33 (C.A.A.F. 2005); United States v. Carpenter, 51 M.J. 393, 396 (C.A.A.F. 1999).  "The standard that we apply here is the constitutional [error] standard as it has been articulated by this [C]ourt in plain error cases since [Powell, 49 M.J. 465 n.*]."  Paige, 67 M.J. at 449 n.7 (citing, as examples, Harcrow, 66 M.J. at 160; United States v. Brewer, 61 M.J. 425, 432 (C.A.A.F. 2005); Carpenter, 51 M.J. at 396).

The statutory basis for this Court's standard is Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006), which states:  "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially

prejudices the substantial rights of the accused."[6]  Where an error of law materially prejudices a substantial right, either this Court or the CCA may notice the error, keeping in mind the need "to encourage timely objections and reduce wasteful reversals;" and to "respect the particular importance of the finality of guilty pleas."  United States v. Dominguez-Benitez, 542 U.S. 74, 82 (2004).

Nothing in Article 59(a), UCMJ, mandates reversal even where an error falls within its terms.  Powell, 49 M.J. at 465. In our view the statutory text of Article 59(a), UCMJ, with the high threshold of "material[] prejudice" to a "substantial right" and discretion to redress error, when considered in light of the principles the Supreme Court has articulated in its consideration of a different rule, preserves the "careful balance . . . between judicial efficiency and the redress of injustice."  Puckett v. United States, 556 U.S. 129, 135 (2009).

---

[6] The statutory basis for the Supreme Court's standard, meanwhile, is Federal Rule of Criminal Procedure 52(b), which, at the time of United States v. Olano, 507 U.S. 725, 731-38 (1993), required only that an error "'affect[] substantial rights,'" id. at 732 (quoting Fed. R. Crim. P. 52(b) (1944)), a less onerous standard by its terms.  Fed. R. Crim. P. 52(b) was amended, effective Dec. 1, 2002.  It now reads, "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  The Notes of Advisory Committee on 2002 Amendments state that "[t]he change was intended to remove any ambiguity in the rule" and to conform it with Supreme Court precedent.  Fed. R. Crim. P. 52(b) advisory committee's note (citing Olano, 507 U.S. at 732; United States v. Young, 470 U.S. 1, 15 n.12 (1985)).

ii.

We turn, then, to the application of plain error review in this case, having already held that under the law as it exists today, it was plain and obvious error for the Government to fail to allege the terminal element of Article 134, UCMJ, in the adultery specification.  See Ballan, 71 M.J. at 34-35; id. at 34 n.4 (citing Fosler, 70 M.J. at 232, as having overruled Mayo, 12 M.J. at 293-94); see also Johnson, 520 U.S. at 468 (finding plain and obvious error by applying the law at the time of appeal); United States v. Sweeney, 70 M.J. 296, 304 (C.A.A.F. 2011) (same).

Having found plain and obvious error that was forfeited rather than waived, the remaining question is "whether there is a remedy for the error," which "will depend on whether the error has prejudiced the substantial rights of the accused."  Ballan, 71 M.J. at 30 (citing Article 59, UCMJ); see also Puckett, 556 U.S. at 142.

The error here -- that Appellee, in a contested case, was charged with and convicted of a specification that failed to allege an element of the offense charged -- implicates Appellee's substantial right to notice under the Fifth and Sixth Amendments.  See Girouard, 70 M.J. at 10 ("Both [the Fifth and Sixth] amendments ensure the right of an accused to receive fair notice of what he is being charged with."); see also Fosler, 70

14

M.J at 232-33 (noting that, in the context of lesser included offenses, "constitutional notice requirements no longer permit[] such broad implication of the terminal element," and imposing similar limits on implying the terminal element in cases involving charged violations of Article 134, UCMJ).  The question, then, is whether the defective specification resulted in material prejudice to Appellee's substantial right to notice. See Article 59(a), UCMJ.

In Ballan, a guilty plea case where there was no objection at court-martial, we applied plain error review and held that it was error for the military judge to accept the appellant's plea of guilty to a specification that failed to allege an element of the offense charged.  71 M.J. at 34-35.  But, despite the error, we held that there was no material prejudice to the appellant's substantial right to notice.  Id. at 35.  This is a conclusion, which, as a result of the unique requirements for accepting a guilty plea in the military context, will likely be true in most factually comparable cases (although each case must still be tested for prejudice).  See United States v. Nealy, 71 M.J. 73, 77-78 (C.A.A.F. 2012); Ballan, 71 M.J. at 34-35.  The same contextual analysis is required in contested cases like Fosler, where the error was preserved -- each case must be reviewed for harmless error to determine whether the constitutional error was harmless beyond a reasonable doubt.  See supra note 5.

15

The prejudice analysis in cases like Appellee's is more nuanced than in Ballan or Fosler: the protections afforded in the context of a military guilty plea inquiry are absent, as are the inherent difficulties of proving that a constitutional error is harmless beyond a reasonable doubt. As a result, such cases demand close review of the trial record. See Girouard, 70 M.J. at 11-12. After such review, we find that under the totality of the circumstances in this case, the Government's error in failing to plead the terminal element of Article 134, UCMJ, resulted in material prejudice to Appellee's substantial, constitutional right to notice.[7] See id.; McMurrin, 70 M.J. at 19-20; see also Fosler, 70 M.J at 229.

---

[7] We disagree that Dominguez-Benitez, 542 U.S. 74, which held that the prejudice burden in the federal system "requir[es] the showing of 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different,'" id. at 82 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)), controls this case. In the first instance, that case is interpreting a federal rule, not applying Article 59(a), UCMJ. Moreover, even if it were, the Supreme Court specifically noted that such a standard was appropriate: (1) "to encourage timely objections and reduce wasteful reversals;" (2) to "respect the particular importance of the finality of guilty pleas;" and (3) where "the violation claimed was of [a Federal Rule of Criminal Procedure], not of due process." Id. at 82-83. Dominguez-Benitez is inapposite given that: (1) any objection by Appellee at trial would have been futile based on the law at the time -- which also alleviates the "sandbagging" concerns noted in Puckett, 556 U.S. at 134; (2) this is a contested case, not a guilty plea case; and (3) the rights at issue are constitutional.

16

iii.

Mindful that in the plain error context the defective specification alone is insufficient to constitute substantial prejudice to a material right, see Puckett, 556 U.S. at 142; Cotton, 535 U.S. at 631-32, we look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is "essentially uncontroverted." Cotton, 535 U.S. at 633; Johnson, 520 U.S. at 470.  On this record, there is no such notice, and the missing element was controverted.  This is particularly problematic in the context of an Article 134, UCMJ, offense, which allows several theories of criminality:  "[A]lthough the terms Congress chose for [Article 134, UCMJ] are broad, what is general is made specific through the language of a given specification.  The charge sheet itself gives content to that general language, thus providing the required notice of what an accused must defend against."  United States v. Jones, 68 M.J. 465, 472 (C.A.A.F. 2010) (citing Parker v. Levy, 417 U.S. 733, 756 (1974)). Neither the specification nor the record provides notice of which terminal element or theory of criminality the Government pursued in this case.

In its opening statement, the Government never mentioned the adultery charge -- let alone how Appellee's conduct satisfied either clause 1 or 2 of the terminal element of

17

Article 134, UCMJ.[8]  The Government also did not present any

specific evidence or call a single witness to testify as to why

Appellee's conduct satisfied either clause 1, clause 2, or both

clauses of the terminal element of Article 134, UCMJ.  The

Government also made no attempt to tie any of the evidence or

witnesses that it did call to the Article 134, UCMJ, adultery

charge.  Although the military judge's panel instructions

correctly listed and defined the terminal element of Article

134, UCMJ, as an element of the adultery specification, this

came after the close of evidence and, again, did not alert

Appellee to the Government's theory of guilt.  See Fosler, 70

M.J. at 230 ("The three clauses of Article 134 constitute three

distinct and separate parts.  Violation of one clause does not

necessarily lead to a violation of the other clauses."

---

[8] The issue in this case -- whether Appellee was prejudiced by
the Government's failure to allege the terminal element of an
Article 134, UCMJ, charge -- should not be confused with the
issue in United States v. Phillips, 70 M.J. 161 (C.A.A.F. 2011)
(addressing whether evidence was legally sufficient to support a
finding of guilty as to a properly pleaded Article 134, UCMJ,
specification).  Specifically, while the Government here
presented evidence during the proceedings from which a
reasonable trier of fact could conclude that Appellee's conduct
satisfied either clause 1 or 2 of the terminal element of
Article 134, UCMJ, see Humphries, 2010 CCA LEXIS 236, at *7,
2010 WL 2266324, at *2 (listing aggravating factors), that
answers a quite different question than whether Appellee was on
notice of the Government's theory of guilt with respect to the
terminal element in this case.  Were legal sufficiency enough,
the purpose of retroactivity -- "the principle of treating
similarly situated defendants the same," Griffith v. United
States, 479 U.S. 314, 323 (1987) -- would be undermined.

(quotation marks and citation omitted)); id. (principles of fair notice require that "[a]n accused must be given notice as to which clause or clauses he must defend against").

The Government's only direct discussion of the adultery specification at issue came during its closing argument when counsel stated the following:  "[I]f you are unpersuaded as to what happened between the accused and [AEH], one thing is for sure.  That this married man had sex with [AEH].  Members, that constitutes adultery."  This statement provides the lay definition of adultery, but does not provide constitutional notice of the elements of the Article 134, UCMJ, offense of adultery.[9]  Specifically, it fails to provide Appellee with notice of which clause of the terminal element of Article 134, UCMJ -- the element that was missing from the specification and which, in turn, makes the action described criminal -- the Government relied on.

### iv.

In sum, the Government did not plead the terminal element of Article 134, UCMJ, and, after a close reading of the trial record, there was nothing during its case-in-chief that reasonably placed Appellee on notice of the Government's theory as to which clause(s) of the terminal element of Article 134,

---

[9] Assuming, even, that such notice could be sufficient at this point in the proceeding.

19

UCMJ, he had violated.  See Girouard, 70 M.J. at 11 (noting that the case was not tried on the theory under which the appellant was convicted).  Nor is Appellee's assertion during closing arguments that the Government had failed to present evidence that his conduct was prejudicial to good order and discipline or service discrediting sufficient for this Court to find either that the charging error was cured, or that the prejudice from that error was dissipated.  Appellee was not on notice of whether he needed to defend against this charge on the basis that his conduct was not service discrediting, not prejudicial to good order and discipline, both, or neither.  See Fosler, 70 M.J. at 230 (finding constitutional notice deficient because the appellant could not know which theory of criminality he needed to defend against); Girouard, 70 M.J. at 11 (noting that the appellant had not defended against the charge on the theory under which he was convicted).  But see Ballan, 71 M.J. at 34 n.7 (noting that prejudice from the charging error highlighted in Fosler, 70 M.J. 230, and United States v. Medina, 66 M.J. 21, 26 (C.A.A.F. 2008), was not present where the unique requirements for acceptance of a guilty plea safeguarded against prejudice to the substantial right to notice).

No single fact or lacuna in the record itself definitively demonstrates material prejudice to the substantial right to constitutional notice implicated by the charging error.  Under

the totality of the circumstances in this case, however, the error in the Article 134, UCMJ, specification was not cured by the Government in any respect in the course of trial, as there is not a single mention of the missing element, or of which theory of guilt the Government was pursuing, anywhere in the trial record.[10]  Compare Girouard, 70 M.J. at 11-12 (finding prejudice on plain error review), with Ballan, 71 M.J. at 35-36 (finding no prejudice on plain error review where "any notice issues or potential for prejudice [were] cured while there [was] still ample opportunity . . . for a change in tactics").  And, while the mere showing of error cannot be "recast[]" as the effect on substantial rights, Puckett, 556 U.S. at 142, nor can the certain error, failure to allege an element, be conflated with the constitutional prejudice, lack of notice -- particularly in the context of Article 134, UCMJ, where the missing element represents alternative theories of criminal liability.  See Fosler, 70 M.J. at 230.

---

[10] To be clear, it is Appellee's burden to prove material prejudice to a substantial right, see Girouard, 70 M.J. at 11, and Appellee has not provided an exemplary brief in support of this point.  However, even from a cursory review of the record, the material prejudice to the substantial right to constitutional notice in this case is blatantly obvious, in large part because it appears the charge was, as Appellee argued at trial, a "throw away charge[]."  While the convening authority was authorized to refer it, the Government essentially ignored the adultery charge at trial insofar as they did not even mention it until a cursory reference during their closing argument.

III.  DECISION

The decision of the United States Air Force Court of Criminal Appeals is reversed in part.  That portion of the decision affirming Appellee's conviction of Charge II, Specification 1, is reversed.  The finding of guilty to that charge and specification is set aside, and the charge and specification are dismissed.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence, or, if necessary, for ordering a rehearing on the sentence.

United States v. Humphries, No. 10-5004/AF

BAKER, Chief Judge (dissenting):

I adhere to my position in United States v. Fosler, 70
M.J. 225 (C.A.A.F. 2011) (Baker, J., dissenting), and
United States v. Ballan, 71 M.J. 28 (C.A.A.F. 2012) (Baker,
J., concurring in the result).  "A specification is
sufficient to allege an offense if 'it contains the
elements of the offense intended to be charged, including
words importing criminality or an allegation as to intent
or state of mind where this is necessary.'"  Fosler, 70
M.J. at 244 (Baker, J. dissenting) (quoting United States
v. Tindoll, 16 C.M.A. 194, 195, 36 C.M.R. 350, 351 (1966)).
Here, as in Fosler, the specification was pleaded under
Article 134, UCMJ, 10 U.S.C. § 934 (2006), and alleged that
a married man wrongfully engaged in sexual intercourse with
a woman not his wife.  I reiterate the point I made in
Fosler:

> Outside the military context, words of
> criminality alone might not provide such notice.
> In the military, however, not all adultery is or
> should be criminalized. . . .  In the military,
> the offense of adultery can only be prosecuted if
> it offends good order and discipline or is
> service discrediting.  Thus, this specification
> was more than sufficient to meet the
> constitutional requirement.

70 M.J. at 244.  "Fair notice under the due process clause,
which is surely demonstrated by actual notice, is satisfied
whether that notice comes in the form of the plea colloquy,

mutual agreement between the parties, or by judicial determination before or during the trial."  Ballan, 71 M.J. at 37 (Baker, J., concurring in the result).

Appellee was on notice that his conduct was charged under Article 134(1), (2), or both.  Moreover, this is a textbook case for why adultery in the military is subject to criminal sanction and can be both service discrediting and undermine good order and discipline:  the acts occurred in base housing; the acts occurred with the spouse of a deployed servicemember; the allegations caused AEH's deployed spouse to return home; Appellee was the father of three minor children; AEH was the mother of two minor children; AEH's children were present and one witnessed Appellee trying to kiss AEH; and the evening involved heavy quantities of alcohol, which Appellee brought to the home. Furthermore, even were I to agree with the majority that there was error in the drafting of the adultery specification at issue here, it remains far from "blatantly obvious" how Appellee was prejudiced in the preparation of his defense in this case.  United States v. Humphries, __ M.J. __ (21 n.10) (C.A.A.F. 2012).

In light of my position based on Fosler that there was no error here, I therefore must address the underlying issues behind the question certified to this Court.  The

first issue is whether this Court has jurisdiction to review a Court of Criminal Appeals opinion where the Court of Criminal Appeals has purported to rule on the basis of sentence appropriateness. On the one hand, sentence appropriateness review is a discretionary grant of authority provided to the Courts of Criminal Appeals. These courts have broad authority to review or modify sentences: "[T]he Court of Criminal Appeals . . . . may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006).

On the other hand, in United States v. Nerad, this Court recognized that in certain contexts the exercise by a Court of Criminal Appeals of sentence appropriateness could raise questions of law reviewable by this court.

> While the [Court of Criminal Appeals] clearly has the authority to disapprove part or all of the sentence and findings, nothing suggests that Congress intended to provide the [Courts of Criminal Appeals] with unfettered discretion to do so for any reason, for no reason, or on equitable grounds, which is a function of command prerogative.

69 M.J. 138, 145 (C.A.A.F. 2010). "[T]he statutory phrase 'should be approved' does not involve a grant of unfettered

discretion but instead sets forth a legal standard subject to appellate review." Id. at 146 (citations omitted).

Where, for example, the exercise of such authority results in "obvious miscarriages of justice or abuses of discretion," we may review whether a sentence "should be approved." United States v. Tardif, 57 M.J. 219, 223-24 (C.A.A.F. 2002). This mimics other areas of the law that at first glance appear to be rooted in fact or discretion, but otherwise present reviewable questions of law when exercised in an arbitrary manner. Thus, for example, facts -- which are ordinarily outside the scope of this Court's jurisdiction -- are reviewed for an abuse of discretion and may be reversed where they are clearly erroneous. Similarly, notwithstanding the Court of Criminal Appeals' sentence review authority, where a sentencing disparity results, this Court will review sentences in similarly situated cases for "obvious miscarriages of justice or abuses of discretion." United States v. Lacy, 50 M.J. 286, 288 (C.A.A.F. 1999) (quotation marks and citations omitted).

Ultimately, however, I do not need to reach a decision as to whether and when this court can or should review a Court of Criminal Appeals' exercise of sentence appropriateness, because it is not clear on what basis the

4

lower court in fact remanded Appellee's case to the convening authority for a new action.  The language used is cast as an exercise in sentence appropriateness.  However, if the Court of Criminal Appeals was exercising its sentence appropriateness power, then there would be no need to remand to the convening authority for a new action, for the review of a sentence for appropriateness is an authority granted to the Court of Criminal Appeals, not the convening authority.  Thus, it would appear if actions speak louder than words, this case was not remanded on the basis of sentence appropriateness.

However, if the Court of Criminal Appeals was seeking to accomplish an appropriateness end to which it did not itself have the authority to reach -- suspension of a bad-conduct discharge -- then it was acting beyond its legal authority.  Whether a court has legal authority to act clearly presents a question of law subject to review by this Court.  The Court of Criminal Appeals cannot direct the manner in which the convening authority exercises his or her independent clemency power under the guise of sentence appropriateness.

However, in this case it did not do so.  The plain language of the lower court's remand indicates that it was providing the convening authority an opportunity to

5

reconsider his earlier action.  But if so, on what basis did the Court of Criminal Appeals act if not under its appropriateness power?  Does the Court of Criminal Appeals have the authority to require the convening authority to reconsider actions in the absence of legal or factual error?  If so, it has not articulated this authority in its opinion.

Therefore, rather than decide this case on the basis of Fosler, I would remand this case to the Court of Criminal Appeals for a new review.  In the event the Court of Criminal Appeals sets aside the convening authority's original action and remands for a new action, it should specify with clarity the basis for doing so.  In the event it disapproves the bad-conduct discharge as a matter of sentence appropriateness, it should indicate why such action does not amount to a miscarriage of justice in a case where the accused received far less than the maximum allowable sentence and where all of the factors relevant to sentence appropriateness for this act of adultery appear to be aggravating factors.

STUCKY, Judge (dissenting):

Appellee and Cross-Appellant, Senior Airman Humphries, failed to demonstrate that the failure of the adultery specification to allege the terminal element was plain error. I would further hold that the United States Air Force Court of Criminal Appeals (CCA) was without authority to remand the case to the convening authority with directions to approve a sentence not to exceed what the CCA thought appropriate. Therefore, I respectfully dissent.

## I. The Specification

The specification in question (Charge II, Specification 1) alleged the following under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006):

> In that SENIOR AIRMAN RYAN D. HUMPHRIES, United States Air Force, 7th Aircraft Maintenance Squadron, Dyess Air Force Base, Texas, a married man, did, at or near Dyess Air Force Base, Texas, on or about 2 February 2005, wrongfully have sexual intercourse with [AH], a woman not his wife.

Appellee pled not guilty but did not object to the specification at trial. Whether the specification is defective and the appropriate remedy for such a defect are matters of law we review de novo. United States v. Ballan, 71 M.J. 28, 33 (C.A.A.F. 2012). When, as here, an appellant alleges for the first time on appeal that a specification fails to state an offense because it does not contain every element of the

offense, we review for plain error.  Id. at 34 (citing United States v. Cotton, 535 U.S. 625, 631–32 (2002)).

## II.  Plain Error

The plain error doctrine "reflects a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed."  United States v. Frady, 456 U.S. 152, 163 (1982), quoted in United States v. Young, 470 U.S. 1, 15–16 (1985).

There are four elements to the Supreme Court's plain error doctrine.  The appellant has the burden of establishing the first three:  (1) there was error; (2) the error was "clear or obvious, rather than subject to reasonable dispute"; and (3) the error "affected the appellant's substantial rights, which in the ordinary case means . . . 'it affected the outcome of the district court proceedings.'"  Puckett v. United States, 556 U.S. 129, 135 (2009) (quoting United States v. Olano, 507 U.S. 725, 734 (1993)); see Cotton, 535 U.S. at 631.  "Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error -- discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  Puckett, 556 U.S. at 135 (alteration in original) (quotation marks and citation omitted).  The Supreme

2

Court has admonished lower courts that "any unwarranted extension" of the plain error doctrine "would disturb the careful balance it strikes between judicial efficiency and the redress of injustice."  Id. (quotation marks and citations omitted); see also United States v. Marcus, 130 S. Ct. 2159, 2164 (2010) ("Lower courts, of course, must apply the Rule as this Court has interpreted it.").

There is some disagreement about the application of the plain error doctrine in the military.  See United States v. Girouard, 70 M.J. 5, 11 n.7 (C.A.A.F. 2011); United States v. Flores, 69 M.J. 366, 373 (C.A.A.F. 2011) (Stucky, J., dissenting in part and concurring in the result); United States v. Paige, 67 M.J. 442, 452 (C.A.A.F. 2009) (Stucky, J., dissenting in part and concurring in the result).  We originally adopted the Supreme Court's plain error test.  See United States v. Fisher, 21 M.J. 327 (C.M.A. 1986).

> In order to constitute plain error, the error must not only be both obvious and substantial, it must also have "had an unfair prejudicial impact on the jury's deliberations."  [Young, 470 U.S. at 16 n.14].  The plain error doctrine is invoked to rectify those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings," United States v. Atkinson, 297 U.S. 157, 160 (1936).  As a consequence, it "is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." [Frady, 456 U.S. at 163 n.14].

Id. at 328–29.

In United States v. Powell, however, we created a military
plain error doctrine because we concluded that the Supreme
Court's doctrine was based on rules that do not apply to
appellate courts within the military justice system.  49 M.J.
460, 463-65 (C.A.A.F. 1998).  We focused on two differences in
the systems -- applicability of the Supreme Court's third and
fourth prongs.

A.  The Third Prong

The third prong of the Supreme Court's plain error test --
that the clear or obvious error "affect[ed] substantial rights"
-- was derived from Fed. R. Crim. P. 52(b); but the federal
rules do not apply to the military justice system.  Id. at 463–
64.  A finding or sentence of a court-martial, on the other
hand, "may not be held incorrect on the ground of an error of
law unless the error materially prejudices the substantial
rights of the accused."  Article 59(a), UCMJ, 10 U.S.C. § 859(a)
(2006) (emphasis added).  We concluded that "materially
prejudices" sets a higher threshold for overturning convictions
and sentences than does "affect[s] substantial rights."  Powell,
49 M.J. at 465.  We nevertheless approved the Fisher
understanding of "materially prejudices the substantial rights
of the accused" -- that the "plain error have 'an unfair
prejudicial impact on the jury's deliberations.'"  Id. (quoting
Fisher, 21 M.J. at 328); see United States v. Bresnahan, 62 M.J.

137, 146 (C.A.A.F. 2005) (defining plain error as error that was plain and obvious and resulted in an "unfair prejudicial impact on the [members'] deliberations") (alteration in original) (citation omitted).  Meanwhile, the Supreme Court defined the third prong in a manner consistent with our holdings in Powell and Fisher -- the appellant must demonstrate "'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'"  United States v. Dominguez Benitez, 542 U.S. 74, 81-82 (2004) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.) (alteration in original); accord Marcus, 130 S. Ct. at 2164 ("a reasonable probability that the error affected the outcome of the trial").

## B.  The Fourth Prong

We asserted in Powell that the fourth prong of the Supreme Court's plain error test -- "that an appellate court should not correct a plain error unless the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings'" -- "applies only to courts exercising discretionary powers of review."[1]  49 M.J. at 465 (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)).  In reviewing this case, this Court is exercising its discretionary

---

[1] I would go further and hold that the Supreme Court's four-prong plain error test applies to the Courts of Criminal Appeals.

powers of review.  See Article 67(a)(3), UCMJ, 10 U.S.C.

§ 867(a)(3) (2006).  Therefore, we should not overturn

Appellee's convictions unless the error "seriously affects the

fairness, integrity, or public reputation of judicial

proceedings."  Johnson, 520 U.S. at 467 (quotation marks and

citations omitted).

C.  Discussion

I agree with the majority that the failure of the

specification to allege an essential element of the offense was

obvious error.  But I conclude that (1) Appellee failed to

establish that the error resulted in material prejudice to his

substantial rights; and (2) the error did not seriously affect

the fairness, integrity, or public reputation of the

proceedings.

Appellee asserts that he was prejudiced because he was

"convicted of an obviously defective specification," and by the

misleading nature of the record of conviction.  But that is the

error, or its possible effect, not the prejudice as defined in

the plain error doctrine.

The majority concludes that the material prejudice to

Appellee's substantial right was his constitutional right to

notice under the Fifth and Sixth Amendments.  United States v.

Humphries, __ M.J. __ (14) (C.A.A.F. 2012).  But, again, "that

is simply an ipse dixit recasting the conceded error -- [failure

of the specification to give notice] -- as the [material prejudice to] substantial rights." See Puckett, 556 U.S. at 142.

To show prejudice, Appellee would have to demonstrate that the error -- the lack of notice -- impaired his ability to defend against the specification such that it had an unfair prejudicial impact on the factfinder's deliberations. Fisher, 21 M.J. at 328; accord Bresnahan, 62 M.J. at 146; Powell, 49 M.J. at 465; see Marcus, 130 S. Ct. at 2164. This he has not done. Appellee has not alleged either that he lacked such notice or that his ability to defend against the adultery allegation was impaired.[2] If Appellee has the burden of demonstrating that the failure of notice somehow impaired his ability to defend against the specification, we should require, at a minimum, that he allege that it did so. See United States v. Washington, 653 F.3d 1251, 1260 (10th Cir. 2011), cert. denied, 132 S. Ct. 1039 (2012).

The majority concedes that Appellee has the burden but ultimately lets him off the hook by suggesting that the

---

[2] This case demonstrates the difference between preserving an issue for appeal by objecting at trial and raising the issue for the first time on appeal. In United States v. Fosler, the appellant preserved the issue by objecting to the specification at trial. 70 M.J. 225 (C.A.A.F. 2011). Therefore, the burden was on the government to show that the failure to allege all the elements of the offense was harmless. The government was unable to do so.

Government had a burden of curing the error at trial.

Humphries, __ M.J. __ (19–21 & n.10). Without further explanation or analysis, the majority concludes that "even from a cursory review of the record, the material prejudice to the substantial right to constitutional notice in this case is blatantly obvious, in large part because it appears the charge was, as Appellee argued at trial, 'a throw away charge.'"[3] Id. at 21 n.10.

Appellee was represented at trial by two military defense counsel, one of whom was a senior defense counsel, each qualified and certified under Article 27(b), UCMJ, 10 U.S.C. § 827(b) (2006), to represent accuseds in general courts-martial. As this was a general court-martial, it was preceded by an Article 32, UCMJ, 10 U.S.C. § 832 (2006), investigation. Appellee and his defense counsel were provided with copies of the investigating officer's report, which spelled out the elements of the offense of adultery, including that such conduct was prejudicial to good order and discipline or was of a nature to bring discredit upon the armed forces. Appellee's closing argument further demonstrates that he was fully aware of the elements of the offense against which he had to defend.

---

[3] The majority does not define the term "throw-away charge." Apparently, it is an offense for which the evidence is legally sufficient for conviction but one the majority would not have charged if they were the convening authority.

> Consider the husband's overseas but consider that this was not open and notorious. Either one of these is not open and notorious, not service discrediting. Have they put any evidence before you that somehow that the unit fell apart because either one of these incidents ever occurred? Well certainly it couldn't have been service discrediting with [S], because that never happened. And if he was the one that was with Ms. [H], was there any prejudice to good order and discipline? They haven't shown that.

> There was no prejudice to good order and discipline, those are throw away charges and I ask you to do just that. Throw them away.

Even assuming Appellee could show prejudice, we should apply the fourth prong to Appellee's case. Powell, 49 M.J. at 465; see Fisher, 21 M.J. at 328. In light of the military's long history of not requiring the terminal element to be pled in Article 134 specifications, Appellee's representation by two qualified and certified military defense counsel, Appellee's failure to allege any cognizable prejudice, and the quality of the evidence establishing that Appellee's conduct was prejudicial to good order and discipline,[4] the error in omitting the terminal element from the specification did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

---

[4] Appellee had sexual intercourse with the wife of a deployed airman in the government quarters she shared with her family. Appellant's conduct goes to the very heart of conduct prejudicial to good order and discipline. It has a corrosive effect on the relationship of members in the unit and the morale of servicemembers who are deployed or may deploy in the future. See Manual for Courts-Martial, United States pt. IV, ¶ 62.c.(2)

Appellee failed to establish prong three or prong four of the plain error test. He failed to demonstrate that his conviction for adultery under Article 134, UCMJ, resulted in material prejudice to his substantial rights or seriously affected the fairness, integrity, or public reputation of judicial proceedings. By finding plain error and reversing Appellee's conviction, the majority disturbs the careful balance the plain error doctrine was meant to strike between judicial efficiency and the redress of justice. Puckett, 556 U.S. at 135.

### III. The CCA's Remand

#### A. Background

The first time the CCA reviewed this case, it did not rule on the findings but nevertheless found "that portion of the appellant's sentence which provides for an unsuspended bad-conduct discharge inappropriately severe." United States v. Humphries, No. 37491, 2010 CCA LEXIS 236, at *7—*8, 2010 WL 2266324, at *2 (A.F. Ct. Crim. App. May 24, 2010). The CCA set aside the convening authority's action and remanded for reconsideration of the sentence "with full knowledge as to the upper limit on appropriateness." Id. at *10, 2010 WL 2266324, at *3 (citation and quotation marks omitted). The CCA then

---

2012 ed.); William Winthrop, Military Law and Precedents 724 (2d ed., Government Printing Office 1920) (1895).

instructed the convening authority that he could approve "an adjudged sentence no greater than one including a suspended bad-conduct discharge."  Id., 2010 WL 2266324, at *3.

As a result of certification by the Judge Advocate General, this Court remanded the case back to the CCA for further action on the findings.  United States v. Humphries, 69 M.J. 491 (C.A.A.F. 2011) (summary disposition).  The CCA summarized its previous ruling as follows:

> Specifically, we determined that the appellant's convictions are legally and factually sufficient and his convictions do not unreasonably exaggerate his criminality. However, after reviewing the record of trial, the submission of briefs from both sides, we set aside the convening authority's action because we believed that an unsuspended bad-conduct discharge was inappropriately severe.

United States v Humphries, No. 37491 (rem), 2011 CCA LEXIS 312, at *3, 2011 WL 6010056, at *1 (A.F. Ct. Crim. App. Aug. 3, 2011).  The CCA again concluded that an unsuspended punitive discharge was inappropriately severe for Appellee's offenses, set aside the convening authority's action and "return[ed] [the record of trial] to The Judge Advocate General for remand to the convening authority for reconsideration of the sentence 'with full knowledge as to the upper limit on appropriateness.'"  Id. at *8, 2011 WL 6010056, at *3 (quoting United States v. Clark, 16 M.J. 239, 243 (C.M.A. 1983) (Everett, C.J., concurring)).

11

## B. Discussion

"[F]ederal courts have no inherent power to suspend a sentence . . .; their authority derives solely from statutes." United States v. Anderson, 583 F.3d 504, 508 (7th Cir. 2009) (citations omitted). Thus, we must review the statutes to determine who, if anyone, in the military has the power to suspend a sentence.

Under the Uniform Code of Military Justice, the following may suspend a court-martial sentence:

(1) The convening authority, in his sole discretion; Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2) (2006);

(2) The President, in a death penalty case, but not for the part of the sentence providing for death; Article 71(a), UCMJ, 10 U.S.C. § 871(a) (2006);

(3) The Secretary of the service, or Under or Assistant Secretary so designated to act on his behalf, in officer cases in which the sentence extends to a dismissal; Article 71(b), UCMJ, 10 U.S.C. § 871(b) (2006);

(4) The Secretary, and when designated by him, the Under or Assistant Secretary, the Judge Advocate General or commanding officer; Article 74(a), UCMJ, 10 U.S.C. § 874(a) (2006). Congress did not grant either military judges or CCAs authority to suspend a sentence. United States v. Healy, 26 M.J. 394, 396 (C.M.A. 1988).

In the 1980s, Congress directed that a commission be appointed to study changes to the UCMJ, including whether military judges and the CCAs should be granted authority to suspend sentences. The commission recommended that the system not be changed and Congress never implemented such a change. See The Military Justice Act of 1983: Advisory Commission Report, vol. I, pt. II, § VI, at 7 (1984).

In this case, the CCA thought the bad-conduct discharge that the convening authority approved should be suspended. Apparently recognizing that they did not have the power to suspend the bad-conduct discharge, they remanded the case to the convening authority for a new action, basically giving him two options -- either approve a sentence that did not include an unsuspended bad-conduct discharge or the CCA would set aside the bad-conduct discharge. The CCA was without authority to take such action.

In approving a sentence, the convening authority, "in his sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part." Article 60(c)(2), UCMJ. That authority has been characterized as "unfettered" as long as there is no increase in the severity of the punishment. United States v. Finster, 51 M.J. 185, 186 (C.A.A.F. 1999); accord United States v. Scalo, 60 M.J. 435, 436 (C.A.A.F. 2005); see also United States v. Wiechmann, 67 M.J. 456, 461 (C.A.A.F.

13

2009).  By remanding in a case in which no legal error was found, the CCA unlawfully fettered the convening authority's discretion.

As the CCA held that the part of the sentence extending to an unsuspended bad-conduct discharge was inappropriately severe, I would remand the case to the CCA with direction to affirm a sentence that does not include a punitive discharge.