# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**B.T. PALMER, A.Y. MARKS, M.N. FULTON**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**BRANDON J. JOHNSONJORDAN**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201500174**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 23 January 2015.
**Military Judge:** LtCol E.A. Harvey, USMC.
**Convening Authority:** Commanding Officer, 1st Battalion, 5th Marines, 1st Marine Division, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** LtCol D.R. Kazmier, USMC.
**For Appellant:** LT Jacqueline Leonard, JAGC, USN; LT Jonathan M. Hawkins, JAGC, USN.
**For Appellee:** CDR James E. Carsten, JAGC, USN; LT James Belforti, JAGC, USN.

**28 July 2016**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PALMER, Senior Judge:

A military judge sitting as a special court-martial convicted the appellant, contrary to his pleas, of one specification of larceny in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The military judge sentenced the appellant to four months' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant now alleges two assignments of error: (1) that the evidence was legally and factually insufficient to support his conviction and (2) that his two trial defense counsel (TDC) were ineffective.[1]

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## Background

In February 2014, the appellant was a barracks manager, which gave him access to his fellow Marines' rooms. On 8 February 2014, Corporal (Cpl) MM returned from week-long battalion field training to discover his barracks room in disarray, his previously-secured window open, and his personal property missing, including an Xbox One game console, an Xbox 360 game console, a Sony PlayStation Vita console, a Nintendo game console, an external hard drive, and five Xbox games. Later that evening, the appellant, who remained behind during the field training, gave Cpl MM the unmarked spare key to Cpl MM's car stating he found the key outside the barracks. Until that moment, Cpl MM was unaware his spare key, which he stored in a nightstand with his PlayStation Vita and Nintendo game consoles, was missing.

During a March 2014 unit health and comfort inspection, items matching the description of Cpl MM's missing property were located in the appellant's room. The appellant consented to a search of his car, which revealed more of Cpl MM's property and two receipts for items sold to GameStop, a consumer electronics retailer. Through serial numbers and other means, investigators verified the items found in the appellant's room and car and the items he sold to GameStop all belonged to Cpl MM. The appellant's sworn statement to military police claimed he bought the Xbox 360 and other items from Lance Corporal (LCpl) SS[2] and gave him a ride to GameStop.

At trial, the appellant testified he bought several items, including the Xbox 360, from LCpl SS, who was pending medical separation from the Marine Corps. He stated he accompanied LCpl SS to GameStop where he sold several items on LCpl SS's behalf. The appellant testified he was unaware the items were stolen when he bought and sold them. He also testified to the strength of his personal relationship with LCpl SS by describing how several weeks later he helped LCpl SS move out of the barracks and helped clear out LCpl SS's off-base storage unit.

In rebuttal, LCpl SS testified that he never sold the appellant any property, never possessed any of the items the appellant sold, never visited a GameStop with the appellant, never left any property in the appellant's car, and never rented or stored any property in an off-base storage unit.

---

[1] The second assignment of error was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] Although LCpl SS was medically discharged and was a civilian when he testified, for ease of identification we refer to him as lance corporal throughout this opinion.

**Discussion**

**Legal and Factual Sufficiency**

The appellant challenges his conviction as legally and factually insufficient. We review questions of legal and factual sufficiency *de novo. United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007). In conducting this appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin,* 63 M.J. at 557.

The appellant argues his conviction was legally and factually insufficient because the military judge found him not guilty of a related housebreaking offense alleging that he entered Cpl MM's barracks room to commit the charged larceny. The appellant avers that his housebreaking acquittal was "mutually exclusive"[3] with his larceny conviction because it negated any theory of liability explaining how the appellant took the property from Cpl MM's room.

 The elements of the larceny charge are:

(1) That between on or about 3-8 February 2014 the appellant wrongfully took certain property from the possession of the owner;

(2) That the property belonged to Cpl MM;

(3) That the property was of a value more than $500.00; and

(4) That the taking by the appellant was with the intent to permanently deprive Cpl MM of the use and benefit of the property or to permanently appropriate the property for the appellant's use or any person other than Cpl MM.

---

[3] Appellant's Motion for Leave to File Supplemental Assignment of Error of 2 Feb 2016 at 11.

3

Charge Sheet; MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV ¶ 46(b)(1).

We first examine the evidence presented at trial to establish the appellant's guilt. We then address the appellant's assertion that the military judge's findings created a mutually exclusive result.

Regarding the first element, the military judge considered significant direct and circumstantial evidence that the taking from Cpl MM was wrongful. Specifically, the property was stolen during a time when the appellant possessed both the means and opportunity to enter Cpl MM's barrack's room. Cpl MM testified he did not give the appellant, or anyone, permission to use or take his property. And, more than four weeks after Cpl MM reported the theft, his external hard drive was discovered in the appellant's barracks room. His Xbox 360 game console was discovered in the trunk of the appellant's car under some clothes along with his Play Station Vita console, which was in a duffel bag. The second and third larceny elements are not in dispute. The evidence showed that the charged stolen property belonged to Cpl MM and that the aggregate value of the items far exceeded $500.00. Regarding the fourth element, the military judge was free to infer the taking occurred with the intent to permanently deprive. No evidence was presented indicating that the appellant ever intended to return the property. To the contrary, that the items were found weeks after they were stolen in several locations in the appellant's control, indicates his intent to permanently deprive. Moreover, GameStop sales receipts in the appellant's car and transaction records from GameStop, revealed the appellant sold Cpl MM's remaining property on 5 February 2014, three days before Cpl MM was even aware it was missing. "An intent to steal may be proved by circumstantial evidence," and "[p]roof of sale of the property may show an intent to steal[.]" *Id*. at ¶ 46(c)(1)(f)(ii).

We reject the appellant's claim that he mistakenly believed the property found in his room and car and sold to GameStop belonged to LCpl SS. We find LCpl SS's unequivocal repudiation of the appellant's narrative about his involvement credible and persuasive. We further find the appellant's claim that he sold the items on LCpl SS's behalf for a commission (even though LCpl SS was present and fully capable of selling the items himself) incredible. Coupled with rebuttal testimony about the appellant's character and reputation for untruthfulness, the evidence is legally and factually sufficient to support his conviction.

We are similarly unpersuaded by the appellant's argument that the housebreaking acquittal rendered his larceny conviction fatally inconsistent. First, case law is well settled that inconsistent verdicts provide an "insufficient basis to reverse" the factfinders' other "substantive findings of Appellant's guilt." *United States v Shelton*, 62 M.J. 1, 13 n.6 (C.A.A.F. 2005); *see also United States v. Barrow*, 42 M.J. 655, 664 (A.F. Ct. Crim. App. 1995) ("[I]nconsistent verdicts, whether from judge or jury, provide no grounds for reversal of a conviction.), *aff'd*, 45 M.J. 478 (C.A.A.F. 1997); *United States v. Lyon*, 35 C.M.R. 279, 285 (C.M.A. 1965) ("An inconsistent verdict is not usually a cause for relief.").

Further, even if we assume that the military judge's verdicts were logically inconsistent, an examination of the elements of housebreaking within the circumstances of this case reveal several rational bases upon which the military judge might have relied.

The elements of the housebreaking charge in this case are:

(1) That the appellant did, between on or about 3 February 2014 and 8 February 2014, unlawfully enter Cpl MM's barracks room; and

(2) That the unlawful entry was made with the intent to commit a criminal offense, to wit: larceny, therein.

Charge Sheet; MCM, Part IV, ¶ 56(b).

Clearly, the military judge believed the prosecution failed to prove at least one of the elements. Given the appellant's responsibilities as a barracks manager with access to rooms for lawful purposes,[4] the military judge was perhaps unconvinced he had entered the room unlawfully, or believed that he formed the intent to steal only after seeing Cpl MM's property in the room. In any event, recognizing that "[a] military judge . . . is presumed to know and follow the law[,]" *United States v. Allen*, 31 M.J. 572, 602, (N.M.C.M.R. 1990) (*en banc*) (citations omitted), *aff'd*, 33 M.J. 209 (C.M.A. 1991), we are satisfied the appellant's housebreaking acquittal did not render his larceny conviction legally or factually insufficient.

 **Ineffective Assistance of Counsel**

The appellant asserts his two TDC were ineffective in a variety of ways. He submitted a declaration in support of his contentions and, in compliance with our order, both his TDC responded with affidavits addressing specified allegations.

We review claims of ineffective assistance of counsel *de novo*. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). The appellant must clear "a high bar" to prevail on such a claim. *Id.* at 371. He must show: (1) that his counsel's performance was deficient and (2) that, but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

The first prong requires the appellant to show that counsel's performance fell below an objective standard of reasonableness, indicating that counsel was not functioning as counsel within the meaning of the Sixth Amendment. *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002). Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate representation. *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004). The second prong requires a showing of prejudice resulting from counsel's deficient performance. *Strickland*, 466 U.S. at 687. Such prejudice must result in the denial "of a fair trial," resulting in "a trial whose result is unreliable." *United States v. Dewrell*, 55 M.J. 131, 133 (C.A.A.F. 2001) (citation and internal quotation marks omitted). The appropriate test for this prejudice is "whether there is a reasonable probability that, but for counsel's error, there would have been a different result." *United States v. Quick*, 59 M.J. 383, 386-87 (C.A.A.F. 2004) (citation omitted).

---

[4] Record at 166-67.

The appellant alleges his TDC were ineffective because they did not seek exculpatory evidence that would have supported the veracity of his version of events and aided in cross examining LCpl SS. Additionally, he claims his TDC conceded his guilt during pre-sentencing argument, contrary to the appellant's explicit instructions. We address his contentions below.[5]

1. <u>Failure to seek storage facility records</u>. The appellant argues his TDC should have requested discovery to subpoena the records of a commercial facility from which, the appellant claims, LCpl SS rented a storage unit. The appellant collaterally testified that in late February 2014, he accompanied LCpl SS to the storage unit and helped him vacate it. In the prosecution's rebuttal case, LCpl SS testified he neither rented a storage unit nor removed items from one with the appellant's help. The appellant now argues that had the TDC obtained the storage facility records, they would have discredited LCpl SS. This failure, the appellant avers, fell far below the level expected of a reasonably competent defense counsel and that had his TDC sought the records, the outcome of the case would be different. We disagree.

First, we find the appellant's allegations are insufficient to establish that his "counsel's performance was deficient" under the first prong of *Strickland*. 466 U.S. at 687. The lead TDC, in response to an order from this court, submitted an affidavit declaration explaining the storage facility's apparent irrelevance because the "charged offenses took place in the barracks and at Game Stop [sic] – not at an off-base storage facility."[6] Indeed, the record reveals no obvious nexus to the storage facility; neither party claims the stolen property was stored at the facility nor was evidence presented that any of the stolen items were in the appellant's or LCpl SS's possession during the purported visit to the facility. The defense case theory, at trial and on appeal, was that LCpl SS was the thief who used an unwitting appellant to either buy or help him sell the stolen property. As the lead TDC noted, information on whether LCpl SS rented a storage facility—which was unconnected to the charged offense— "would [not] have a material impact on the trial." [7] "The factual assertions in the affidavit provide a 'reasonable explanation for counsel's actions,' which weighs against the appellant overcoming the presumption of competence." *United States v. Wilkerson*, No. 201200438, 2013 CCA LEXIS 367, at *7, unpublished op. (N.M.Ct.Crim.App. 30 Apr 2013) (quoting *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Since no factual dispute exists between the appellant's pleadings and the TDCs' affidavits, we find no requirement for additional fact-finding on this issue. *See, United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Ultimately, in the absence of any showing that a discovery request would have actually produced evidence to impeach LCpl SS, we decline to find prejudice resulting from counsel's performance, even if we assume it was deficient.

---

[5] The appellant's post-trial declaration also argued his TDC were ineffective in failing to seek security videos of the appellant and LCpl SS at GameStop, failing to contact unnamed potential character witnesses, and failing to seek a mid-trial continuance to locate photo and video recordings of the appellant and LCpl SS socializing together and depicting LCpl SS's speaking mannerisms. *See* Appellant's Second Consent Motion to Attach filed on 21 Dec 2015, Appellant'sDeclaration of 9 Nov 2015 at 1-2. Having carefully considered these contentions, we find them without merit. *United States v Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

[6] Government Response to Cour Order filed 18 Feb 2016, lead TDC (Captain AA) 10 Feb 2016 Declaration at 2-3.

[7] *Id.* at 2.

2. <u>Failure to seek telephone company records</u>. The appellant asserts the records from LCpl SS's telephone company would have shown LCpl SS lied when he denied texting the appellant regarding Cpl MM's property. The appellant argues the TDC's decision to not seek those records constituted deficient performance. A review of his lead TDC's declaration reveals concerns that the appellant's text message history might uncover uncharged misconduct and might "expose [the appellant] to additional criminal liability if they came to light."[8] This was a reasonable concern given that the partial text message provided by the appellant, and ultimately admitted at trial, contained offensive and vulgar language, as well as the appellant's conditional death threats directed at LCpl SS. TDC enjoy a strong presumption that he or she "was competent, rendered adequate assistance at trial, and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Lowe*, 50 M.J. 654, 656 (N.M.Ct.Crim.App. 1999) (citations omitted). Here we find the lead TDC's effort to minimize his client's exposure to additional criminal liability to be a reasonable exercise of professional judgment.[9] Moreover, even if we assume the lead TDC erred by not seeking discovery of the text message history between the appellant and LCpl SS, we find that any potential prejudice was mitigated by the military judge admitting the appellant's "screen shot" text history, wherein LCpl SS purportedly told the appellant that "he was not going all the way back to Pendleton just to go to jail [for someone] that tried snitching on me[.]"[10] Satisfied with the adequacy of the party's declarations and finding them factually consistent, additional fact-finding is not required. *Ginn*, 47 M.J. at 248. Taken together, we find an insufficient basis upon which to grant the appellant's requested relief.

3. <u>TDC conceded the appellant's guilt during pre-sentencing argument</u>. During argument, the appellant's assistant TDC, stated:

> [T]he defense recognizes that what [the appellant] did was not right. Stealing from another Marine is absolutely unacceptable behavior; however that has to be balanced against the years of credible service that [he] provided the Marine Corps . . . [a]nd yeah he made a mistake. And, yes, he violated the trust of his brother Marines. . . . This is a Marine who knows what he did was wrong, he violated their trust, and who wants nothing more than to continue to work with veterans."[11]

The appellant claims he explicitly instructed his TDC to not concede his guilt during his sentencing argument.[12] The appellant alleges that by conceding his guilt, as opposed to merely

---

[8] *Id*. at 3.

[9] In light of the lead TDC's intent to limit the appellant's criminal liability, we need not assess whether the appellant now raises sufficient specific information as to whether the telephone records existed or whether those records, if located, would have assisted in the appellant's defense. *See generally*, *United States v. Russell*, 48 M.J. 139, 140-41, (C.A.A.F. 1998).

[10] Defense Exhibit A at 1.

[11] Record at 266-67.

[12] Both TDC recall extensive presentencing case discussions with the appellant and explaining the need to acknowledge the military judge's verdict. Captain GH, the lead counsel during sentencing phase, does not recall the appellant instructing him to not acknowledge the findings during his sentencing argument.

acknowledging the military judge's guilty finding, the TDC's performance was deficient. We disagree.

In his post-trial declaration, the assistant TDC provided a reasonable explanation for his actions, noting his belief that the military judge would look with disfavor upon any attempt to continue contesting the case merits during the presentencing trial phase. In particular, he believed that "[g]iven the nature of bench trials, some acknowledgment of the judge's findings was necessary to establish a reasonable basis to request a lighter sentence."[13] At trial, the TDC effectively argued for minimal punishment, citing the appellant's difficult upbringing, meritorious combat service, and diagnosed combat-related post-traumatic stress disorder.

Moreover, even if we were to assume the assistant TDC's performance was deficient, we do not find a reasonable probability that, but for counsel's error, there would have been a different result. *Quick*, 59 M.J. at 387. When considering the specific facts of this case, presented in the context of a judge-alone trial— in which the imposed sentence was far below the jurisdictional maximum—we do not believe the assistant TDC's references to the verdict caused the military judge to impose a more onerous punishment.[14] Accordingly, we are satisfied the imposed sentence was both fair and just.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

Judge MARKS and Judge FULTON concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[13] Government Response to Cour Order filed 18 Feb 2016, Assistant TDC (Captain GH) 11 Feb 2016 Declaration at 3.

[14] Although the appellant's and Capt GH's post-trial affidavits contain differing recollections on whether the appellant asked his TDC to not concede guilt during the sentencing phase, we find this disagreement, even if resolved in the appellant's favor, harmless. In the context of this judge-alone case, we find the TDC decision to acknowledge the appellant's guilt did not result in an increased sentence nor did it prevent reduced punishment. *Ginn*, 47 M.J. at 247-48.