# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39172**

———————————

**UNITED STATES**
*Appellee*

v.

**Jason M. PRINGLE**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 October 2017

———————————

*Military Judge:* Shaun S. Speranza.

*Approved sentence:* Dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 15 May 2016 by GCM convened at Edwards Air Force Base, California and Hill Air Force Base, Utah.

*For Appellant:* Captain Patricia Encarnación Miranda, USAF; James S. Trieschmann, Jr., Esquire.

*For Appellee:* Major G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before DREW, MAYBERRY, and DENNIS, *Appellate Military Judges*.

Chief Judge DREW delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge DENNIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

DREW, Chief Judge:

Appellant entered mixed pleas at his court-martial. A general court-martial with officer and enlisted members convicted Appellant, contrary to

his pleas, of one specification of committing, on divers occasions, an indecent act upon the body of his under 16-years-of-age step-daughter, AC, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The members acquitted Appellant of several other sexual offenses he allegedly committed against his step-daughter.[1] The military judge accepted Appellant's pleas and found him guilty of two specifications of violating a no-contact order, in violation of Article 92, UCMJ, 10 U.S.C. § 892. The court members sentenced Appellant to a dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant raises eight issues on appeal: (1) whether Appellant's pleas to violating the no-contact orders were provident, (2) whether Appellant's conviction of the divers indecent acts is legally and factually sufficient, (3) whether the military judge abused his discretion by providing a propensity instruction under Mil. R. Evid. 413, (4) whether the military judge abused his discretion in admitting sentencing evidence, (5) whether Appellant is entitled to sentencing credit for illegal pretrial punishment, (6) whether Appellant is entitled to relief for post-trial delay in the processing of his case, (7) whether Appellant's trial defense counsel were ineffective for failing to raise a violation of Appellant's Article 10, UCMJ, 10 U.S.C. § 810, right to a speedy trial,[2] and (8) whether Appellant's Sixth Amendment[3] right to confrontation was violated by the acceptance of an unsworn victim impact statement during presentencing in the face of trial defense counsel's affirmative waiver of any objection.[4]

We find that Appellant's pleas to violating the no-contact orders were provident and affirm his convictions therefor. However, we find that the conviction of divers indecent acts is factually insufficient and set it aside. In light of our action, we decline to address Appellant's remaining issues. We set aside the sentence and authorize a rehearing on sentence for the remaining offenses.

---

[1] These offenses included rape and carnal knowledge, in violation of the version of Article 120, UCMJ, 10 U.S.C. § 920 prior to 1 October 2007; forcible sodomy, in violation of Article 125, UCMJ, 10 U.S.C. § 925; taking indecent liberties and an additional specification of an indecent act, both in violation of Article 134.

[2] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] U.S. CONST. amend. VI.

[4] Appellant raises this issue pursuant to *Grostefon*, 12 M.J. 431.

## I. BACKGROUND

AC was born when her mother was 16 years old. Her biological father was never part of her life growing up. Her mother joined the Air Force when AC was 8 years old. Her mother met Appellant at her first duty station in Germany and they soon married, when AC was approximately 9 years old. Appellant did not immediately move into their household, as he was stationed elsewhere in Europe. When he eventually moved in with AC and her mother, he became the stricter, more disciplinarian, parent. AC became very emotional about Appellant being so strict with her, to the point that she told her mother that she wanted to commit suicide. During their time in Germany, AC's mother gave birth to AC's half-sister.

In 2003, when AC was 12 years old, the family moved to Yokota Air Base, Japan. She was in the seventh grade in the 2003–2004 school year and in the eighth in the 2004–2005 school year. While they were assigned to Yokota, AC's mother gave birth to AC's half-brother. AC separately told two of her female friends that Appellant was molesting her, but she asked them not to tell anyone. She also told her boyfriend, with whom she had a sexual relationship. There was significant stress in AC's household about her relationship with her boyfriend. Both Appellant and her mother were very restrictive about AC being alone with her boyfriend. AC and her boyfriend planned to tell AC's mother about the allegations, but before they could do so, one of AC's friends told the friend's mother, who informed AC's mother and the Air Force Office of Special Investigations (AFOSI).

AC told AFOSI that Appellant had been molesting her in her bedroom after school. Appellant was a security forces investigator, would work odd hours, and would on occasion arrive home before AC's mother would get off work. AC told investigators that the first time Appellant molested her, he told her to get undressed and get on her hands and knees (so-called "doggy-style") and he rubbed his penis between the cheeks of her buttocks. She also told AFOSI that the first time Appellant had sexual intercourse with her occurred during an overnight shopping trip for school clothes to Yokosuka Naval Base.

Appellant was removed from the household while the matter was under investigation. Even though she initially made AC available to AFOSI, AC's mother did not believe the allegations. After getting into a very heated argument with AC about seeing her boyfriend, her mother decided to send AC to the United States to live with her aunt. After AC left, AFOSI asked her mother where she was but her mother refused to tell them. Ultimately her mother was given an order to tell AFOSI where AC was, but she refused and was administratively punished for refusing the order. Eventually her mother's unit learned that AC was in California and they curtailed her mother's

assignment and transferred the family, except for Appellant, to Beale Air Force Base, California. Appellant remained in Japan.

The Yokota legal office contacted the Beale legal office and asked them to contact AC's mother to see if she would allow AC to continue with the investigation. When contacted by the Beale legal office, AC's mother initially refused to make AC available. However, a month later she arranged for AC to be interviewed before school. When they arrived at the legal office for the interview, AC's mother declined to sit in. During the interview, AC completely recanted her allegations, repeatedly asserting that "nothing happened . . . it didn't happen," and declined to further participate. AFOSI suspended the investigation. AC's mother and Appellant eventually divorced. During a subsequent battle for custody of the two children born during their marriage (AC's half-siblings), AC's mother attempted to bring up the molestation allegations but the family court judge would not allow it. The judge awarded custody of the two young children to Appellant. AC's mother was devastated. The resulting emotional distress eventually led her to attempt suicide and, later, to separate from the Air Force. AC admitted during cross-examination that she believed her mother would regain custody of her children if Appellant was convicted at his court-martial.

Approximately ten years after originally making her allegations, as a result of an unrelated investigation, AFOSI contacted AC and she agreed to speak with them. When she sat down with the agent, she said that she had "waited ten years of my life" to participate in the investigation of Appellant.

## II. DISCUSSION

### A. Guilty Plea

"We review a military judge's acceptance of a guilty plea for an abuse of discretion." *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)). "The military judge must question the accused under oath about the offenses to ensure there is an adequate factual basis for a guilty plea." *United States v. Mull*, 76 M.J. 741, at *5, (A.F. Ct. Crim. App. 2017) (en banc), *rev. denied,* ___ M.J. ___, No. 17-0544/AF, 2017 CAAF LEXIS 916 (C.A.A.F. 13 Sep. 2017); Rule for Courts-Martial (R.C.M.) 910(e); *see also* Article 45(a), UCMJ, 10 U.S.C. § 845(a). "It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis . . . ." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012). However, we look to the entire record to determine whether there is a substantial

basis to question the guilty plea. *United States v. Jordan*, 57 M.J. 236, 239 (C.A.A.F. 2002).

"A plea is provident so long as Appellant was 'convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt.'" *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (alterations in original) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *Moon*, 73 M.J. at 386 (quoting *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014)). We "must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (quoting *Hines*, 73 M.J. at 124).

In order to accept the guilty pleas, the military judge must have elicited from Appellant a factual basis for each of the elements of the offenses to which he pleaded guilty. The military judge correctly described to Appellant the elements of Specification 1 of Charge IV:

> One, that a member of the armed forces, namely Colonel [RT], issued a certain lawful order to restrain from initiating any contact or communication with Master Sergeant [AP], either directly or through a third party;
>
> Two, that you had knowledge of the order;
>
> Three, that you had a duty to obey the order; and
>
> Four, that on divers occasions between on or about 1 May 2015 and on or about 30 May 2015, at or near Marine Corps Air Station Miramar, California, you failed to obey the order by wrongfully soliciting third parties to initiate contact or communication to Master Sergeant [AP].

The military judge similarly described to Appellant the elements of Specification 2 of Charge IV:

> One, that a member of the armed forces, namely Colonel [RT], issued a certain lawful order to restrain from initiating any contact or communication with Miss [VK], either directly or through a third party;
>
> Two, that you had knowledge of the order;
>
> Three, that you had a duty to obey the order; and
>
> Four, that on divers occasions between on or about 1 May 2015 and on or about 1 June 2015, at or near Marine Corps Air Sta-

tion Miramar, California, you failed to obey the order by wrongfully soliciting third parties to initiate contact or communication to Miss [VK].

For both offenses, the military judge provided Appellant the standard definitions from the *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9 (10 Sep. 2014), and ensured that Appellant understood each of the elements and their corresponding definitions. The military judge conducted an extensive inquiry with Appellant to ensure that Appellant and the military judge believed he was legally and factually guilty. In particular Appellant established that the orders in question were lawful and that his multiple violations of them were wrongful and without any legal justification or excuse. On appeal, Appellant now asserts that some of his communications with third parties that he described to the military judge would not necessarily have resulted in the third parties contacting or communicating with Master Sergeant AP and Miss VK as alleged. However, during the military judge's inquiry, Appellant readily admitted quite the opposite. He told the military judge that he communicated with the third parties on multiple occasions specifically intending to initiate the proscribed contacts or communications through the third parties and that he knew he was violating the no-contact orders by doing so.

Having reviewed the entire record, we have determined that there is no basis to question Appellant's guilty pleas to either specification of Charge IV. Accordingly, we find that Appellant's pleas were provident and the military judge did not abuse his discretion in accepting them.

## B. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction of divers indecent acts. We review both legal and factual sufficiency de novo. *United States v. Beatty*, 64 M.J. 456, 459 (C.A.A.F. 2007). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasona-

ble doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). As with legal sufficiency, the term "reasonable doubt" "does not mean that the evidence must be free of conflict." *United States v. Galchick*, 52 M.J. 815, 818 (A.F. Ct. Crim. App. 2000).

Inconsistent findings alone provide an "insufficient basis to reverse" the factfinders' other "substantive findings of Appellant's guilt." *United States v Shelton*, 62 M.J. 1, 13 n.6 (C.A.A.F. 2005); *see also United States v. Barrow*, 42 M.J. 655, 664 (A.F. Ct. Crim. App. 1995) ("[T]he long standing rule is that 'the fact-finders may believe one part of witness' testimony and disbelieve another.' Moreover inconsistent verdicts, whether from judge or jury, provide no grounds for reversal of a conviction.") (citations omitted), *aff'd*, 45 M.J. 478 (C.A.A.F. 1997); *United States v. Lyon*, 35 C.M.R. 279, 285 (C.M.A. 1965) ("An inconsistent verdict is not usually a cause for relief.").

To sustain a conviction for indecent acts as alleged in Specification 1 of Charge III, the Government was required to prove: (1) that on divers occasions between on or after 24 November 2003 and on or about 25 July 2005, at or near Yokota Air Base, Japan, Appellant committed a certain act upon the body of AC by rubbing his penis between her exposed butt cheeks while she was in a "doggy-style" position; (2) that, at the time of the acts, AC was a female under the age of 16 years; (3) that Appellant's acts were indecent; (4) that AC was not Appellant's spouse; (5) that Appellant committed the acts with the intent to gratify his sexual desires; and (6) that, under the circumstances, Appellant's conduct was to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.[5]

Whether the facts, as alleged, would have constituted indecent acts was not disputed at trial. Rather, Appellant's position, which was presented to the members through the testimony of other witnesses, including AC herself, was that the events to which AC testified never happened at all. The only evidence against Appellant as to all of the allegations of sexual misconduct—rape, carnal knowledge, forcible sodomy, two specifications of indecent acts, and indecent liberties—was AC's testimony and the testimony of three of her childhood friends, including her boyfriend, that she told them various versions of the allegations. Notably, while AC admitted she talked to individuals

---

[5] *Manual for Courts-Martial, United States* (2002 ed.), pt. IV, ¶ 87.b.(1).

at the Beale legal office, she adamantly denied ever recanting her allegations during the interview. However, the Beale Chief of Military Justice testified that during his interview of AC she repeatedly stated that "it didn't happen" and "nothing happened." She also said that she made her allegations because Appellant was a "strict disciplinarian." AC also agreed that she later talked by phone with someone from the Beale legal office, but again denied telling him that her allegations were false and that she was refusing to cooperate with the prosecution. The Beale Staff Judge Advocate testified, however, that he wrote a contemporaneous memo in which he recorded that he made a follow-up call to AC. During the call she reiterated that she would not cooperate with any investigation and if subpoenaed and forced to testify, she will confirm that that the allegations against Appellant are false. He also recorded that her recantation was "forceful."

The court members convicted Appellant of only one of the indecent act specifications. There was some circumstantial corroboration for that specification. The military judge posed the following court member question to AC's mother: "Did [Appellant] frequently ask you during sexual relations to allow him to rub his penis between your butt cheeks?" She responded, "He just did it." The court members acquitted Appellant of the remaining contested allegations, including the rape allegation which was corroborated by lodging receipts as to one specific time and place alleged by AC, an overnight shopping trip to Yokosuka Naval Base. Although charged as divers rapes over a year and a half period, AC testified that Appellant had sexual intercourse with her only once, during the Yokosuka trip. One of the female friends to whom AC made her allegations testified that, according to a videotape of the friend's interview with AFOSI in 2005, AC told her that Appellant had sexual intercourse with her 15 times. AC denied ever telling her friend that.

The Defense's theory at trial was that AC made her initial allegations in a general attempt to remove Appellant, who was the disciplinarian in the home, from the household and to facilitate AC's access to her boyfriend. AC admitted that her mother caught AC in a bathroom with her boyfriend a week before her allegations came to light and, at the time, AC and her boyfriend had already made a plan to inform AC's mother of the allegations. The Defense's theory as to why, roughly ten years later, AC would withdraw her (denied) recantation and once again assert that Appellant sexually molested her, was to support her mother's attempt to regain custody of AC's half-siblings. These motives, if true, applied equally as to all of the contested allegations.

AC's lengthy direct and cross-examination brought out a number of inconsistencies and contradictions in her testimony. There were a number of things to which she testified that were inconsistent with her prior statements from Japan and California years before, prior testimony months before, and

her defense interview days before. In addition, she testified that the first time that Appellant sexually molested her, she was still in the seventh grade. AFOSI had apparently told her during her initial report that she was inconsistent with the dates she was alleging Appellant abused her, a fact she admitted during cross-examination. Also during cross-examination, she at first denied having said that when Appellant first assaulted her (the first of the divers indecent acts of which the court members convicted Appellant) he stated he was sexually frustrated because her mother was pregnant with her half-brother. She then admitted that she had testified precisely that way during her direct testimony earlier the same day. She said that Appellant told her that he needed her to "help him out" because he was not being sexually satisfied by AC's mother due to the pregnancy. The Defense confronted her with the fact that her mother did not become pregnant until she was in the eighth grade.

The Prosecution made several attempts to resolve these inconsistencies. Trial counsel argued that AC's description of Appellant's penis was consistent with the medical evidence and was something that she would not have otherwise known, but for the molestation. On the other hand, the Defense argued that her description was inconsistent with the medical evidence and lacked details that she would have known if her testimony was true.

The Prosecution presented testimony from a forensic psychologist who indicated that delayed reporting, inconsistent statements, and recantations by victims of sexual abuse are not unusual. While this testimony may have minimized some of the damage to AC's credibility, it did not support or otherwise enhance the believability of her allegations. (In other words, the existence of inconsistencies and recantations did not make her allegations more likely than if they did not exist.)

Many of the inconsistencies in AC's testimony could easily be attributable to the well over ten years since the purported events she described. However, some of her inconsistencies, such as her complete denial that she ever recanted her allegations, a fact which we find she did on two separate occasions, and the significant inconsistency of her claim that Appellant had sexual intercourse with her only once with her flat denial that she told her friend that he had intercourse with her 15 separate times, are much more difficult to reconcile as honest but mistaken lapses of memory.

After taking a fresh, impartial look at the evidence in its entirety, making our own independent determination as to whether the evidence constitutes proof of each required element of indecent acts, and making allowances for not having personally observed the witnesses, we are not convinced of Appellant's guilt of the divers indecent acts beyond a reasonable doubt and thus

find the evidence factually insufficient. Accordingly, we set aside the finding of guilt to Specification 1 of Charge III and to Charge III.

### III. CONCLUSION

The findings of guilty to Specification 1 of Charge III and to Charge III are **SET ASIDE** and they are **DISMISSED WITH PREJUDICE**. The findings of guilty to the Specifications of Charge IV are correct in law and fact and are **AFFIRMED**. The sentence is **SET ASIDE**. A rehearing on sentence is authorized. Article 66(c), UCMJ, 10 U.S.C. § 866.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court