# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40258**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jordan R. LEE**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 27 July 2023

————————————

*Military Judge*: Matthew N. McCall (pretrial motions and arraignment); Jason M. Kellhofer.

*Sentence*: Sentence adjudged 9 December 2021 by GCM convened at Seymour Johnson Air Force Base, North Carolina. Sentence entered by military judge on 4 February 2022: Bad-conduct discharge, confinement for 24 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Major David L. Bosner, USAF; Major Alexandra K. Fleszar, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge RICHARDSON delivered the opinion of the court, in which Judge CADOTTE and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Senior Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of three specifications of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 24 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant raises seven issues on appeal, which we have reordered and consolidated as follows: (1) whether Appellant's convictions are legally and factually sufficient;[2] (2) whether the military judge abused his discretion in failing to compel the Defense's character witness and in excluding that witness' testimony; (3) whether the military judge improperly excluded constitutionally required statements; (4) whether the military judge abused his discretion in deciding Specifications 1 and 2 of the Charge were not unreasonably multiplied at findings; and (5) whether Appellant was deprived of a constitutional right to a unanimous verdict. We have carefully considered issues (4) and (5) and find they do not require discussion or warrant relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)). We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.[3]

## I. BACKGROUND[4]

MC served his first four years in the Air Force overseas. MC arrived at Seymour-Johnson Air Force Base in late November 2020; Appellant was MC's sponsor. The two became friends.

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Military Rules of Evidence, and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant raises legal sufficiency pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] In sentencing argument, trial defense counsel argued that, in contrast to trial counsel's recommendation for a dishonorable discharge, "a BCD is a much more appropriate sentence." The record does not indicate whether trial defense counsel's argument for a bad-conduct discharge comported with Appellant's wishes. *See United States v. Dresen*, 40 M.J. 462, 465 (C.M.A. 1994) (when trial defense counsel concedes the appropriateness of a punitive discharge, "counsel must make a record that such advocacy is pursuant to the accused's wishes."). Appellant has not claimed error or prejudice, and we find relief is not warranted.

[4] Unless otherwise noted, the facts in this section are derived from MC's testimony.

MC spent the evening of Christmas 2020 with Appellant, KP, and KP's husband Staff Sergeant (SSgt) WP, who three shared a home. After KP and SSgt WP turned in for the night, Appellant and MC went to Appellant's room to watch a movie. They reclined on Appellant's king-size bed, with their backs to the wall, watching a movie on a television across the room.

MC fell asleep. At some point he woke up but kept his eyes closed. He thought "something didn't feel right" and "something was going on." He realized his "hand was wrapped around [Appellant's] penis, with [Appellant's] hand over [his hand], [Appellant] was pleasing himself, masturbating while using [MC] to do it for him." Appellant's penis was erect, and Appellant was naked from the waist down. Appellant then used Appellant's other hand to unbutton MC's pants and "pull [MC's] penis out too." MC explained his reaction:

> So, after those, after the panic, I decided you know, in a split second, I just need to show that I'm awake, I just need to show that I know what's going on. Pretending to wake up eventually, you know, I opened my eyes. As my eyes were opened, everything seemed to stop. My hand wasn't moving anymore, his hand wasn't moving anymore. I opened my eyes, you know, I looked over and he, in my mind, pretended to be asleep. My eyes were closed, but my hand was still on his penis. You know, he was under the blanket, I just, I didn't really understand what was going on, I just had to look. I had to know. And so, of course I lift up the blanket and I see everything I just described with my own eyes.

MC did not consent to the sexual activity by Appellant. MC got off the bed, buttoned his pants and put on his shoes, and went to his car.

While the windshield of his car was defrosting, MC texted his best friend, Ms. MH, who called him back about five minutes later. MC was "ugly crying" as he was talking to her. Ms. MH testified MC sounded "very upset and distraught" and "frantic and like he was crying," and she "knew something bad had happened." MC told her "what happened, back on [Appellant's] bed." Ms. MH testified about what MC told her during that call:

> He told me that he . . . fell asleep while watching a movie with [Appellant], and he had woken up with his hand on [Appellant's] penis and [Appellant's] hand moving around on his, and when he kind of woke up and moved around a little bit, [Appellant] pretended like he was asleep, and that's when he got up and left, and then he went out and called me.

While MC was on the phone with Ms. MH, Appellant came up to MC's car. MC berated Appellant, saying things like "how could you, why would you, what were you thinking[.]" Without looking up at MC, Appellant said, "I'm sorry. I'm sorry." Ms. MH testified about what she heard:

> While we were talking on the phone, he said that [Appellant] had come outside and had said either [MC] had asked him in a very loud, almost yelling, very upset way, like, "why did you do this, why did you think this was okay?" And it was hard to hear, but it was either he answered with "I'm sorry" or "I don't know."

MC drove home, and the next day talked to his roommate SSgt CN "about what happened the night previous." SSgt CN testified to the effect that MC told him Appellant had committed a sexual act upon him while MC was at Appellant's house, and that it was without MC's consent.

Another witness, SSgt DR, testified she was friends with MC and called him around Christmas 2020. During that call, MC told her that he was assaulted at Appellant's house, without MC's consent.

On 6 January 2021, MC's supervisor, Technical Sergeant (TSgt) CS, orally provided initial supervisory feedback to MC. TSgt CS repeatedly reminded MC that as a supervisor himself, he should not forget to take care of himself. MC "broke down and started crying" and "just told [TSgt CS] everything that happened." TSgt CS testified MC told him that on Christmas 2020, Appellant committed a non-consensual sexual act on MC. TSgt CS informed MC that he was a mandatory reporter, and called the base Sex Assault Prevention and Response office. Ultimately, MC reported Appellant's actions to agents from the Office of Special Investigations (OSI).

At the court-martial, three witnesses testified about MC's character for truthfulness: Ms. MH, SSgt CN, and TSgt CS. They all opined he was truthful.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United*

*States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted). In resolving questions of legal sufficiency, we are "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Bright*, 66 M.J. 359, 365 (C.A.A.F. 2008) (internal quotation marks and citations omitted). The evidence supporting a conviction can be direct or circumstantial. *See United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021) (citing Rule for Courts-Martial (R.C.M.) 918(c) (additional citation omitted)). "[A] rational factfinder[ ] could use his 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *Id.* at 369 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). The "standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (internal quotation marks and citation omitted).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (second alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

To convict Appellant of abusive sexual contact as alleged in Specification 1, the Government was required to prove the following elements beyond a reasonable doubt: (1) Appellant committed a sexual contact upon MC, specifically by causing MC to touch Appellant's penis with MC's hand with an intent to gratify Appellant's sexual desire, (2) MC was asleep, and (3) Appellant knew or reasonably should have known that MC was asleep. *See* 10 U.S.C. § 920(d); *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(4)(e).

To convict Appellant of abusive sexual contact as alleged in Specification 2, the Government was required to prove the following elements beyond a reasonable doubt: (1) Appellant committed a sexual contact upon MC, specifically by causing MC to touch Appellant's penis with MC's hand with an intent to

gratify Appellant's sexual desire, and (2) Appellant did so without MC's consent. *See* 10 U.S.C. § 920(d); *MCM*, pt. IV, ¶ 60.b.(4)(d).[5]

To convict Appellant of abusive sexual contact as alleged in Specification 3, the Government was required to prove the following elements beyond a reasonable doubt: (1) Appellant committed a sexual contact upon MC, specifically touching MC's penis with Appellant's hand with an intent to gratify Appellant's sexual desire, and (2) Appellant did so without MC's consent. *See* 10 U.S.C. § 920(d); *MCM*, pt. IV, ¶ 60.b.(4)(d).

### 2. Analysis

Appellant personally asserts the findings of guilty to the Charge and its specifications are legally insufficient because no reasonable factfinder could have found beyond a reasonable doubt that (1) MC was asleep as charged in Specification 1, and (2) MC did not consent to the conduct alleged in Specifications 2 and 3. Through counsel, Appellant asserts the findings of guilty are factually insufficient because MC was not a credible witness. We are unpersuaded.

A rational finder of fact could have found the Government proved each element of each offense beyond a reasonable doubt. Importantly, corroboration of a witness's testimony is not required for legal sufficiency. *See United States v. Rodriguez-Rivera*, 63 M.J. 372, 383 (C.A.A.F. 2006) ("The testimony of only one witness may be enough . . . so long as the members find that the witness's testimony is relevant and is sufficiently credible."). MC credibly testified that he awoke to find Appellant holding MC's hand rubbing Appellant's penis, that Appellant touched MC's penis, and MC did not consent to this sexual activity with Appellant. MC immediately reported the incidents to a friend, whose testimony confirmed MC was distressed. The next day and week MC made consistent reports to other people. Additionally, multiple witnesses opined MC had a very good character for truthfulness.

We considered Appellant's specific assertions on these issues. Whether MC had turned conversations to a sexual topic, chose to spend Christmas with Appellant, may have been sexually interested in men, voluntarily went into Appellant's bedroom, fell asleep sitting upright on the bed, or did not move during the sexual conduct are not incompatible with, and do not cause us to doubt, the findings of guilt in this case. We conclude that viewing the evidence produced at trial in the light most favorable to the Prosecution demonstrates a rational trier of fact could have found the essential elements of the convicted offenses

---

[5] The Government did not charge Specifications 1 and 2 in the alternative. Rather, Specification 1 addresses Appellant's conduct while MC was asleep, and Specification 2 addresses Appellant's conduct that continued after MC awoke.

beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Rodela*, 82 M.J. at 525.

## B. Character Witness

On 19 November 2021, the Defense filed a motion to compel production of Mr. JS, a character witness. On 23 November 2021, the Prosecution filed an opposition to the defense motion and filed a motion in limine to prevent Appellant from introducing impermissible character evidence, specifically Mr. JS's testimony. On 29 November 2021, in a consolidated ruling the military judge denied the defense motion and granted the government motion.[6] Appellant asserts the military judge abused his discretion in ruling against him. We find the military judge did not abuse his discretion in not compelling the presence of the witness or in ruling the expected testimony inadmissible in findings.

### 1. Additional Background

During its investigation of Appellant, OSI agents interviewed Mr. JS, with whom Appellant had had a sexual relationship. Appellant sought to have Mr. JS testify as a witness to Appellant's character. Specifically, the Defense proffered in its motion that Mr. JS would testify Appellant "has a character for being sexually guarded" as well as "reserved" and "unassertive." The Defense sought to elicit both opinion and evidence of specific instances. Appellant stated the evidence was relevant and necessary to his defense in that the evidence would contradict, refute, or impeach MC.[7] In its motion in limine, the Prosecution argued that the expected testimony was inadmissible.

In his written ruling, the military judge found testimony from Mr. JS that Appellant "was reserved, unassertive, and never initiated sexual intercourse" and Mr. JS's opinion that Appellant was "'sexually guarded'" were "irrelevant to the charges at hand." The military judge found the scope of Mr. JS's foundation for his opinion was limited to Appellant's interactions with Mr. JS only. Similarly, he found Mr. JS's testimony would be "lacking factual assistance"

---

[6] The military judge did not grant Appellant's request for a hearing on the motion. In his written ruling, the military judge noted that no facts were in dispute. When he marked his ruling on the record, the military judge implied that a reason he did not hold a hearing was to more quickly resolve an issue relating to ordering the presence of a potential witness. He asked, "is there anything further to be heard on that motion, or with regard to that motion," and both parties answered in the negative. Appellant has not claimed error or prejudice, and we find none.

[7] Appellant did not assert that the evidence was relevant to whether MC consented to the charged conduct, or to show that Appellant reasonably believed MC consented.

as it would not address Appellant's interactions with MC. The military judge found under Mil. R. Evid. 403 that any possible relevance of the expected testimony "is substantially outweighed by the confusing nature of introducing such evidence."[8]

On appeal, Appellant asserts error only with respect to the military judge denying him the ability to ask Mr. JS his opinion of Appellant's character for being reserved, unassertive, and sexually guarded.[9]

**2. Law**

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). We also review a military judge's decision to deny production of a witness for an abuse of discretion. *United States v. Shelton*, 62 M.J. 1, 7 (C.A.A.F. 2005). We find an abuse of discretion when the military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted). "[U]nder the last of these tests," we must find "'more than a mere difference of opinion'; rather, the military judge's ruling 'must be arbitrary, fanciful, clearly unreasonable or clearly erroneous.'" *United States v. Uribe*, 80 M.J. 442, 451 (C.A.A.F. 2021) (quoting *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009)).

At a court-martial, relevant evidence is generally admissible. Mil. R. Evid. 402. Evidence is relevant when it has any tendency to make a fact of consequence in determining the action more probable or less probable than it would be without the evidence. Mil. R. Evid. 401. Nevertheless, Mil. R. Evid. 403 permits a military judge to "exclude relevant evidence" at a court-martial "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

---

[8] In a footnote in his ruling, the military judge asserted he "tends to find that Mr. [JS's] testimony would likely be admissible in some regard for sentencing and could certainly be accomplished telephonically if found admissible and is so requested." The Defense did not call Mr. JS as a witness in sentencing.

[9] Further, Appellant does not assert before us that he could have elicited evidence of specific instances of the proffered character traits. He also does not assert the military judge erred in his consideration of other character traits (including being selfless, helpful, and putting others before himself), or that Mr. JS had not witnessed Appellant engage in the type of conduct with which he was charged.

An accused may offer reputation or opinion testimony of an accused's pertinent character trait. Mil. R. Evid. 404(a)(2), 405(a). In this context, "pertinent" means "relevant" to the misconduct charged. *See United States v. Everage*, 19 M.J. 189, 192 (C.M.A. 1985) (citation omitted). "Whether the particular trait is 'pertinent' depends on the relationship of the accused's defense to the charged crime." *United States v. Pruitt*, 43 M.J. 864, 867 (A.F. Ct. Crim. App. 1996) (citing *United States v. Gagan*, 43 M.J. 200 (C.A.A.F. 1995)), *aff'd*, 43 M.J. 148 (C.A.A.F. 1997). Only when a specific character trait "is an essential element of a charge, claim, or defense" may the trait be proved by specific instances of the person's conduct. Mil. R. Evid. 405(b); *United States v. Schelkle*, 47 M.J. 110, 112 (C.A.A.F. 1997).

At a court-martial, "[e]ach party is entitled to the production of evidence which is relevant and necessary." R.C.M. 703(e)(1). "Relevant evidence is 'necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue.'" *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (quoting R.C.M. 703(f)(1), Discussion, *Manual for Courts-Martial, United States* (2000 ed.)); *see also* R.C.M. 703(b)(1), Discussion. This includes witness testimony. *See United States v. Powell*, 49 M.J. 220, 225 (C.A.A.F. 1998). Testimony is material if it is of consequence to the determination of guilt. *See United States v. Bishop*, 76 M.J. 627, 639 (A.F. Ct. Crim. App. 2017) (citation omitted). "A witness whose testimony is necessary and material must be produced or the proceedings abated, unless the testimony 'would be merely cumulative to the testimony of other defense witnesses.'" *Powell*, 49 M.J. at 225 (quoting *United States v. Miller*, 47 M.J. 352, 359 (C.A.A.F. 1997)).

A ruling that denies production of a witness should be reversed only if, "on the whole," denial was improper. *United States v. McElhaney*, 54 M.J. 120, 126 (C.A.A.F. 2000) (quoting *United States v. Ruth*, 46 M.J. 1, 3 (C.A.A.F. 1997)). Moreover, we will not reverse a military judge's denial of a witness request unless we have "a definite and firm conviction that the [military judge] committed a clear error of judgment in the conclusion [he or she] reached upon a weighing of the relevant factors." *Id.* (citing *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993)).[10]

---

[10] These factors "include: the issues involved in the case and the importance of the requested witness to those issues; whether the witness is desired on the merits or the sentencing portion of the case; whether the witness's testimony would be merely cumulative; and the availability of alternatives to the personal appearance of the witness, such as depositions, interrogatories, or previous testimony." *United States v. McElhaney*, 54 M.J. 120, 127 (C.A.A.F. 2000).

### 3. Analysis

Appellant claims the military judge abused his discretion in both denying Appellant's motion to compel Mr. JS as a witness and in granting the Prosecution's motion to preclude Mr. JS's testimony as impermissible character evidence in findings at Appellant's court-martial. We begin our analysis with the latter.

Our first question is whether the character traits of Appellant "being reserved, unassertive, and sexually guarded" were pertinent and therefore relevant. The military judge focused on the limited foundation for Mr. JS's opinion—that Mr. JS apparently had no knowledge of Appellant's interactions with other people or with MC in particular. The military judge found the expected testimony about the character traits was "irrelevant to the charges at hand," but ultimately found enough relevance to conduct balancing under Mil. R. Evid. 403. We find the military judge's ruling was not influenced by an erroneous view of the law, and was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous.

We struggle to see how a character for being reserved, unassertive, or sexually guarded counters the allegation that Appellant initiated sexual activity with someone who was asleep. Appellant argues, "A reserved, unassertive, sexually guarded person is not going to engage in sex without knowing where they stand in a relationship. A reserved, unassertive, and in particular, sexually guarded person is going to be less likely to initiate sex at all, and much less so against someone's consent." On the contrary, someone who is hesitant to initiate sexual activity with a conscious person—like Appellant, as per Mr. JS's expected testimony—may be more comfortable initiating sexual activity with a sleeping person. Moreover, that same reserved, unassertive, or sexually guarded person arguably is more likely to pretend to be asleep when the other person awakes during the sexual conduct. At best for Appellant, the nature of the expected testimony on the character traits cuts both ways; at worst, it favors the Prosecution. We find the military judge did not abuse his discretion in prohibiting the expected testimony based on its low probative value and the risk of confusion.

For similar reasons, we cannot conclude the military judge abused his discretion in denying the Defense motion to compel Mr. JS's production for findings. Having ruled that the expected testimony about Appellant's character traits was inadmissible, we appreciate why he did not separately analyze the factors relevant to witness production, including the importance of the requested witness to the issues involved in the case, and whether the witness's

testimony would be merely cumulative.[11] We find no clear error of judgment in not compelling the witness, s*ee McElhaney*, 54 M.J. at 127, and no abuse of discretion.

## C. Constitutionally Required Statements

Appellant contends the military judge erred in limiting the scope of testimony about a statement of a sexual nature that MC purportedly made prior to the time of the offenses. We find no error.

### 1. Additional Background

The following exchange took place during trial counsel's direct examination of MC:

> Q. Now, prior to going back in [Appellant's] room that night, were there any conversations between you and [Appellant] that were sexual in nature or any discussions or conversations that were sexual in nature?
>
> A. I don't think so, no.

Before beginning cross-examination of MC, the Defense raised an issue with this testimony under Mil. R. Evid. 412; the military judge considered the issue in a closed hearing. The Defense proffered that "[MC] had a conversation with [witnesses] and [Appellant] that he enjoys [a certain type of sexual act] . . . and that would be an act that would be – that is open to both male on male relationships and male on female relationships."[12] The Defense asserted that the specific statement was relevant to whether MC conveyed to Appellant that he was open to sexual acts with a male, specifically that certain type of sexual act. In contrast, the Government proffered that the witnesses instead would testify that *Appellant* made the statement, and suggested the witnesses be called to testify in a closed hearing.

The military judge ruled the Defense could question MC in cross-examination on "whether or not conversations of a sexual nature took place" involving him and Appellant, but "not get into the substance." The military judge found any question "getting into" particular "sex acts . . . risks the concern of becoming prejudicial, or individuals being uncomfortable with hearing that language

---

[11] In the Law section of his written ruling, the military judge identified a non-exhaustive list of factors. The case he cited for these factors, *United States v. Bennett*, 12 M.J. 463, 466 (C.M.A. 1982), and the case Appellant cites in his brief, *McElhaney*, 54 M.J. at 127, both cite *United States v. Tangpuz,* 5 M.J. 426, 429 (C.M.A. 1978).

[12] The exact nature of the sexual act is contained in sealed materials. The act is not of the type Appellant was charged with committing against MC. It is not necessary for our resolution of the issues in this opinion to provide more detail.

or holding it against somebody when it's not necessary to get into the exact language." As the hearing progressed, the Defense stated they did not intend to confront MC on cross-examination with a prior inconsistent statement, but instead intended to call SSgt WP and KP as witnesses.

After the Government rested, the Defense again raised this issue to the military judge. The Defense explained that they "don't intend to go further than our discussion at the [Mil. R. Evid.] 412 motion" and believed the military judge ruled that they "could not get into specifics" but "were permitted to get into . . . the general nature of what was discussed, or more to the point if there was a discussion had." The military judge related he was not allowing the witnesses' testimony as a prior inconsistent statement of MC, but instead "to rebut th[e] inference" that discussion of a sexual nature never happened. He added,

> [B]ecause the only reason any of this was brought up by [the Government] or would be is because it goes to the issue of consent. . . . I do find that it is constitutionally permissible in the limited fashion under [Mil. R. Evid.] 412.
>
> . . . .
>
> There's no reason to be getting into specifics, again, the only point here is whether or not . . . such conversation took place which . . . has some rebuttal of assistance to that inference left by the direct examination.

The Defense did not ask the military judge to reconsider his ruling and allow them to get into specifics, and instead said, "All [they] intend to get out of the witnesses is, did those conversations take place, where they took place, and how often."

Ultimately, the witnesses were not called to testify in a closed hearing about the details of any prior statements. On the merits, the Defense called only one of the two witnesses, SSgt WP, who testified that in group settings with Appellant present, "oftentimes [MC] would change the subject to those of a sexual nature, even if it wasn't the previous topic." He testified it happened on the date of the alleged offenses.

### 2. Law

"We review the military judge's ruling on whether to exclude evidence pursuant to [Mil. R. Evid.] 412 for an abuse of discretion." *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citing *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010)). The military judge's findings of fact are reviewed for clear error and his conclusions of law are reviewed de novo. *Id.* (citing *Roberts*, 69 M.J. at 26).

A military accused has a constitutional right to confrontation of his or her accusers, including the right to cross-examination. *McElhaney*, 54 M.J. at 129–30 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). This right is not absolute, however. *Id.* A military judge has "broad discretion to impose reasonable limitations . . . 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* at 129 (quoting *Van Arsdall*, 475 U.S. at 679). Further, a military judge has the power to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . protect witnesses from harassment or undue embarrassment." Mil. R. Evid. 611(a).

Mil. R. Evid. 412 provides that in any proceeding involving an alleged sexual offense, evidence offered to prove the alleged victim engaged in other sexual behavior or has a sexual predisposition is generally inadmissible, with three limited exceptions. The burden is on the defense to overcome the general rule of exclusion by demonstrating an exception applies. *See United States v. Carter*, 47 M.J. 395, 396 (C.A.A.F. 1998).

The third exception under Mil. R. Evid. 412 provides that the evidence is admissible if its exclusion "would violate the constitutional rights of the accused." Mil. R. Evid. 412(b)(3). Generally, evidence of sexual predisposition of an alleged victim is constitutionally required "when [it] is relevant, material, and the probative value of the evidence outweighs the dangers of unfair prejudice." *Ellerbrock*, 70 M.J. at 318 (citation omitted). The dangers of unfair prejudice to be considered "include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (quoting *Van Arsdall*, 475 U.S. at 679). "Military judges receive wide discretion" in balancing probative value and danger of unfair prejudice, and "less deference if they fail to articulate their analysis on the record," but "an absence on the record of a military judge's reasoning does not – by itself provide a basis for finding error." *United States v. St. Jean*, 83 M.J. 109, 113 (C.A.A.F. 2023) (citation omitted).

**3. Analysis**

Appellant asserts the military judge erred in not allowing him "to place on the record that [MC] in fact had *multiple* conversations with [Appellant] where he repeatedly volunteered the information that he enjoyed [the certain type of sexual act] and was open to male-male relationships." We find Appellant did not meet his burdens at trial to show such evidence existed and was constitutionally required to be presented to the factfinder.

At the closed hearing, trial defense counsel and trial counsel had different proffers of what the defense witnesses would say under oath. Contrary to his

assertion on appeal, at trial the Defense did *not* proffer that this sexual act was discussed on multiple occasions, or that MC said he was open to sexual acts with a male. Instead, the Defense asserted just one "conversation," "that *he* enjoys [the certain type of sexual act]," and such act "is open to both male on male relationships and male on female relationships." The Government countered with its proffer that it was Appellant who made the statement about the certain type of sexual act, and suggested the witnesses testify at a closed hearing to clarify the facts.

The Defense did not meet its burden of persuasion on this contested factual issue. *See* R.C.M. 905(c) (unless otherwise provided in the *MCM*, the burden of persuasion is on the party raising the motion). The Defense offered the military judge a contested proffer of facts, but did not support its proffer with testimony or other evidence, despite having the time and opportunity. The military judge accepted this proffer as a good faith basis to cross-examine MC with prior statements. However, the military judge did not accept the Defense proffer for impeachment of MC about the sexual act through the witnesses. Instead, the military judge left open the possibility he would reconsider his ruling limiting the scope of the testimony after hearing the witnesses and prior to their testimony before the members. From our read, the Defense seemed content with the scope of the ruling, and did not pursue testimony on the specific language of any alleged sexual conversation.

Even if we found the Defense's proffer sufficient for the military judge to find as fact that MC may have made a specific statement about the certain type of sexual act, we find the military judge did not abuse his discretion in limiting the scope of testimony about prior sexual conversations involving Appellant and MC. During the closed session, the military judge acknowledged both the probative value and the danger of unfair prejudice in the alleged specific statement. He found the specifics of "the language being used or getting into sex acts" increased the likelihood of prejudice, but did not significantly increase the impeachment value—whether a sexual conversation even occurred. The Defense asserted the value was more than impeachment: their single argument was that the specific language would tend to make it more likely that MC would have engaged in a consensual sexual act with Appellant.[13] Considering the facts at issue in Appellant's case, the military judge determined that evidence MC may have enjoyed the certain type of sexual act did not outweigh the danger of unfair prejudice—that is, making the members "uncomfortable" or

---

[13] Unlike on appeal, the Defense did not argue this statement provided evidence of a mistake of fact as to consent.

"holding it against somebody when it's not necessary."[14] Indeed, whether MC said he enjoyed the certain type of sexual act does not make it more or less likely he would consent to sexual conduct of a different type as charged in this case with a person of a certain gender or with Appellant in particular. The Defense had the opportunity to explore in a closed hearing the context of the alleged specific comment and the sexual conversations overall to show the probative value was higher, but did not.

The military judge's findings of fact were not clearly erroneous, his determinations were not influenced by an erroneous view of the law, and his decision was inside the range of choices reasonably arising from the applicable facts and the law. *See Miller*, 66 M.J. at 307. Understanding that "a mere difference of opinion" is insufficient to find an abuse of discretion, we do not find the military judge's ruling limiting the scope of testimony about prior sexual conversations involving MC to have been arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *See Uribe*, 80 M.J. at 451.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

FLEMING E. KEEFE, Capt, USAF
Acting Clerk of the Court

---

[14] On this point, we are reminded the Government proffered that Appellant and not MC brought up the certain type of sexual act, and testimony to that effect could unfairly prejudice Appellant.